## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F+W MEDIA, INC., *et al.*,[1] | Case No. 19-10479 (KG) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 13** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING AND USE CASH COLLATERAL; (II) MODIFYING THE AUTOMATIC STAY; AND (III) SCHEDULING A FINAL HEARING

Upon the motion (the "**Motion**"), of the  debtors and debtors-in-possession (the "**Borrowers**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") commenced on March 10, 2019 (the "**Petition Date**"), for entry of an interim order (this "**Order**") and a final order under sections 105, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), seeking:

(I)     authorization for the Borrowers to obtain up to $8,000,000 in principal amount of postpetition financing (the "**DIP Financing**") on the terms and conditions set forth in this Order and the Debtor-in-Possession Credit Agreement to be executed and delivered (as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Agreement**";[2] and together

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  New Publishing Holdings, Inc. (4101); F+W Media, Inc. (5953); F+W Subscription Services, LLC (3663); F+W Trade Show & Events, LLC (0268); F+W OH e-Commerce, LLC (3762); Former Quilting Inc. (7854); The Writers Store, Inc. (6951); F&W Media International Limited (UK Registered No. 04003204); and F+W NH e-Commerce, LLC (9731).  The headquarters for the above-captioned Debtors is 1140 Broadway, 14th Floor, New York, New York 10001.

[2]  Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the DIP

with all agreements, documents and instruments delivered or executed in connection herewith or therewith, including, without limitation, the DIP Term Sheet and Approved Budget (as defined in paragraph 3(e) below), in each case as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Documents**"), among the Borrowers, the lenders from time to time party thereto (collectively, the "**DIP Lenders**"), and Fortress Credit Co. LLC, as administrative agent and collateral agent for itself and the DIP Lenders (in such capacity, the "**DIP Agent**");

(II)     authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(III)     authorization for the Debtors to use the Cash Collateral (as defined in paragraph 12 below) and all other DIP Collateral (as defined in paragraph 6 below), in each case subject to the terms and conditions of this Order; and

(IV)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing for this Court to consider entry of a final order approving the Motion, which order shall be substantially in the form of this Order and otherwise contain terms and conditions acceptable to the DIP Agent (the "**Final Order**").

A hearing having been held by this Court on March 12, 2019 (the "**Interim Hearing**"), and upon the record made by the Debtors at the hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED, ORDERED, AND ADJUDGED THAT**:

1.     *Jurisdiction*.  This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are continuing to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

Agreement.  Until the execution and delivery of, and occurrence of the effective date under, such Debtor-in-Possession Credit Agreement, the term "DIP Agreement" shall mean the term sheet attached hereto as Exhibit A (together with the exhibits thereto, the "**DIP Term Sheet**").

2.    *Notice*.  On the Petition Date, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, the Debtors provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated below: (i) the Office of the United States Trustee for this District (the "**U.S. Trustee**"); (ii) the Debtors' twenty (20) largest unsecured creditors; (iii) the DIP Agent; (iv) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (v) the local office for the Internal Revenue Service, and (vi) all other parties requesting to receive notice prior to the date hereof (collectively, the "**Notice Parties**").  Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no further notice relating to this proceeding is necessary or required.

3.    *Findings Regarding The DIP Financing; Approved Budget*.

(a)    *Good Cause*.  Good cause has been shown for the entry of this Order.  The Debtors have an immediate need to obtain the DIP Financing and to use the DIP Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Debtors, and pay the costs of administering the Chapter 11 Cases.  The DIP Financing and the Debtors' use of the DIP Collateral (including the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.  Accordingly, the Debtors and their estates will suffer immediate and irreparable harm

{00290789.2 / 1280-001 }

Page 3

01:24255533.2

unless the Debtors are immediately authorized to obtain the DIP Financing and use Cash Collateral on the terms and conditions set forth in this Order.

(b)      *No Alternative Sources of Financing*.  The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, this Order and the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting the DIP Liens (as defined in paragraph 6 below) and the Super-Priority Claims (as defined in paragraph 7 below), in each case on the terms and conditions set forth in this Order and the DIP Documents.

(c)      *Reasonably Equivalent Value*.  The terms of the DIP Financing and the use of the DIP Collateral (including the Cash Collateral) pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.  The Debtors require both additional financing under the DIP Financing and the use of Cash Collateral under the terms of this Order in order to satisfy their postpetition liquidity needs.  After considering all of their alternatives, the Debtors have concluded, in an exercise of sound business judgment, that the financing to be provided by the DIP Agent and the DIP Lenders pursuant to the terms of this Order and the DIP Documents represents the best financing presently available to the Debtors.

(d)      *Good Faith*.  The DIP Documents and the use of the DIP Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors and the DIP Lenders, and their respective

professionals.  All DIP Obligations (as defined in paragraph 4(a) below) have been, and shall be deemed to have been, extended by the DIP Agent and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to, and are hereby granted, the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is stayed, vacated, reversed, amended or modified on appeal or otherwise.

(e)    *Approved Budget*.  Attached hereto as Exhibit B is a budget (the "**Initial Approved Budget**") setting forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Initial Approved Budget.  The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtors and approved by the DIP Agent in writing (each such additional budget, a "**Supplemental Approved Budget**"), in each case without further notice, motion or application to, order of, or hearing before, this Court (but subject to the objection rights of the U.S. Trustee and the statutory committee of unsecured creditors appointed in the Chapter 11 Cases as provided in paragraph 4(b) below).  The aggregate, without duplication, of all items in the Initial Approved Budget and any Supplemental Approved Budgets shall constitute an "**Approved Budget**."  The Approved Budget is an integral part of this Order and has been relied upon by the DIP Lenders in deciding to consent, or not otherwise object, to entry of this Order.

(f)    *Immediate Entry of Order*.  The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the

interim relief set forth in this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and the use of the DIP Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates. *as set forth in this Order*

4. *Authorization Of The DIP Financing And The DIP Documents.*

(a) *Interim Amount*. The terms and conditions of the DIP Agreement are hereby approved on an interim basis. The Debtors are hereby authorized to enter into and perform the transactions contemplated by this Order and the DIP Documents and, in the case of the Borrowers, to borrow under the DIP Agreement up to an aggregate principal amount of $2,000,000 of the Loans (the "**Interim Amount**") for working capital and other general corporate purposes of the Debtors pursuant and subject to the terms and conditions of the Approved Budget, this Order, and the DIP Documents. For purposes of this Order, the term "**DIP Obligations**" shall mean and include all amounts owing under or in connection with the DIP Agreement or other DIP Documents (including, without limitation, all "Obligations" as defined in the DIP Agreement) and shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable by the DIP Agent or the DIP Lenders under this Order, the DIP Agreement or other DIP Documents), and any indemnity claims, in each case whether contingent or otherwise and whether arising before or after the Petition Date.

(b) *Further Assurances*. In furtherance of the foregoing and without further notice, motion or application to, order of, or hearing before, this Court, the Debtors are

authorized and directed to perform all acts and to execute and deliver all instruments and documents that are reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents or this Order, including without limitation:

(i)    the execution and delivery of, and performance of the transactions contemplated by, the DIP Documents;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors and the DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents; provided, however, that a copy of any material amendment or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and the counsel to the statutory committee of unsecured creditors appointed in the Case (the "**Committee**"), if any, each of whom shall have five (5) business days from the date of such notice within which to object in writing to such material modification or amendment. If any such party timely objects to such proposed material modification or amendment, then such modification or amendment shall only be permitted pursuant to an order of this Court;

(iii)    the payment to the DIP Agent and the DIP Lenders, as the case may be, of the DIP Obligations as and when due as set forth in this Order or the DIP Documents; and

(iv)    the prompt performance of all other acts required under or in connection with this Order or the DIP Documents, including, without limitation, prompt delivery to the DIP Agent or DIP Lenders (and their respective professionals) of such reporting and financial information and access to the Debtors' books and records, in each case, as may be reasonably requested by the DIP Agent or DIP Lenders from time to time.

(c)    *No Impairment*. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors and be enforceable against the Debtors in accordance with the terms hereof and thereof. No obligation or liability owed, or payment, transfer or grant of security, to the DIP Agent or any DIP Lender under this Order or any DIP Document shall be stayed, restrained, impaired, disgorged, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law

{00290789.2 / 1280-001 }

Page 7

01:24255533.2

(including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim, whether in the Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if these Chapter 11 Cases are converted to ones under Chapter 7 of the Bankruptcy Code (collectively, the "**Successor Case**"). The DIP Obligations, once paid by the Debtors, shall be non-refundable.

(d)      *Interest, Fees, Costs and Expenses*.  The DIP Obligations shall bear interest at the rates (including at the default rate after the occurrence of a Specified Event (as defined in paragraph 8 below)), and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Order and the DIP Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.  The Debtors shall pay on demand all reasonable fees, costs, expenses and other charges payable under the terms of the DIP Documents and subject to the limits set forth therein.  The Debtors shall defend, indemnify, and hold harmless the DIP Agent, the DIP Lenders, and the other Indemnitees (as defined in the DIP Agreement) to the extent set forth in the DIP Documents.  None of such fees, costs and expenses payable pursuant to this Order shall be subject to separate approval by this Court and no recipient of any such payment shall be required to file any interim or final fee application.  With respect to the professional fees, costs and expenses of the DIP Agent and DIP Lenders, the Debtors shall pay such fees, costs and expenses provided for in this Order promptly (but in any event, no later than twenty (20) days) after the invoices for such fees, costs, and expenses (which invoices may be redacted to the extent necessary to delete any

information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) shall have been submitted to the Debtors, the U.S. Trustee, and counsel to the Committee, if any.  If any of the Debtors, the U.S. Trustee or the Committee objects to the DIP Agent's or the DIP Lenders' entitlement to the amounts sought or the reasonableness of such amounts, the objecting party shall so notify the DIP Agent in writing within ten (10) days of the objecting party's receipt of the applicable invoice, and the dispute shall be resolved by this Court (if not consensually resolved by the DIP Agent and the objecting party).  In the event of an objection to any such amounts, the Debtors shall make payment of any portion of the amount that is not subject to dispute, with the balance payable upon consensual resolution or resolution by this Court.

(e)     _Conditions Precedent_.  In addition to any conditions precedent contained in the DIP Documents, it is a condition precedent to DIP Agent's and DIP Lenders' willingness to provide the DIP Financing that this Order shall have been entered by this Court (with the Initial Approved Budget) and such Order and Initial Approved Budget shall be in form and substance acceptable to DIP Agent.

(f)     _Authorized Signatories_.  The signature of Gregory A. Osberg and/or Michael Healy, officers of the Debtors, appearing on any one or more of the DIP Documents shall be sufficient to bind the Debtors and their estates thereto.  No board of directors, member, shareholder or other corporate approval or resolutions shall be necessary or required to

consummate, effect, or validate the transactions contemplated in the DIP Documents or in this Order.

5.    *Permitted Use*.

(a)    *Generally*.  Notwithstanding anything in this Order to the contrary, the Debtors may use the Cash Collateral and proceeds of the DIP Financing, and incur DIP Obligations, solely in accordance with and pursuant to the financial covenants and other terms and conditions set forth in the DIP Documents and this Order, including, without limitation, pursuant to the Approved Budget, but in all events only until the occurrence of the Termination Date (as defined in paragraph 8 below) and regardless of whether the Debtors have expended the entire amount of Cash Collateral or proceeds of the DIP Financing permitted by the terms of this Order prior to the Termination Date.  Notwithstanding the foregoing, if the DIP Agent or the DIP Lenders in their respective sole discretion advance funds, provide other extensions of credit to the Debtors or permit the use of Cash Collateral in excess of any financial covenants or other terms and conditions set forth in the DIP Documents and this Order (or any other limitations in the DIP Documents, including, without limitation, the Approved Budget), such advances and extensions of credit and uses of Cash Collateral shall be entitled to, and are hereby granted, the rights, priorities, benefits and protections of this Order; provided that the principal amount of the Term Loans shall not exceed the Interim Amount without further order of this Court.

(b)    *No Duty to Monitor Compliance*.  The DIP Agent and the DIP Lenders may assume the Debtors will comply with this Order, the Approved Budget and the DIP Documents and shall not (i) have any obligation with respect to the Debtors' use of Cash Collateral or the use of proceeds of the DIP Financing; (ii) be obligated to ensure or monitor the

Debtors' compliance with any financial covenants, formulae, or other terms and conditions of this Order or any DIP Document, or (iii) be obligated to pay (directly or indirectly from the Cash Collateral or DIP Collateral) any expenses incurred or authorized to be incurred pursuant to this Order or any DIP Document or be obligated to ensure or monitor that sufficient Cash Collateral or proceeds of DIP Financing exists to pay such expenses.

(c)    *Restricted Payments*.  Except to the extent approved in writing by the DIP Agent or as expressly provided in this Order or the DIP Documents, the Debtors shall not use any Cash Collateral or proceeds of the DIP Financing to pay any administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code or any prepetition unsecured claims (including prepetition priority unsecured claims).  The Debtors are hereby authorized to make the payments authorized by Order of this Court in connection with the Debtors' "first day" motions, which are identified in the Declaration of Gregory A. Osberg in support of the first day motions.

(d)    *Budget Reports*.  Commencing on the third Thursday after the Petition Date, the Debtors shall provide to the DIP Agent, so as actually to be received on each Thursday, weekly line-by-line certified variance reports for the preceding weekly period and on a cumulative basis from third Thursday after the Petition Date to the report date, comparing actual cash receipts and disbursements to amounts projected in the Approved Budget, in form and scope reasonably acceptable to the DIP Lenders.  The Debtors shall, on Thursday of each week from the Petition Date until the Termination Date, deliver to the DIP Lenders an updated, "rolling" 13-week budget which sets forth by line item updated projected receipts and disbursements for the Debtors during the period commencing from the end of the previous week through and including thirteen weeks thereafter; provided that the Debtors shall still be subject to

{00290789.2 / 1280-001 }

01:24255533.2

and be governed by the terms of the Approved Budget then in effect, and the DIP Agent and the DIP Lenders shall, as applicable, have no obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto to the extent that it exceeds the amounts set forth in the Approved Budget, except as expressly permitted in sub-paragraph (e) below. The Debtors shall, by no later than seven (7) business days prior to the end of the period covered by the then applicable Approved Budget, deliver to the DIP Agent a Supplemental Approved Budget.

(e)  *Permitted Budget Variance*. The Debtors shall operate their businesses in accordance with the applicable Approved Budget, subject to a permitted variance of 10% per line item as measured on a cumulative basis, and the requirements of the Bankruptcy Code and orders of this Court; provided, however, that nothing contained herein shall authorize the Debtors to exceed the total amount of the Interim Amount for the interim period; provided, further, that payment of professional fees set forth in the Approved Budget shall not be subject to the permitted variance or be used for purposes of calculating the permitted variances;[3] rather, the aggregate professional fees incurred during the periods set forth in the Approved Budget shall not exceed the total amount of professional fees for the total period set forth in the Approved Budget, notwithstanding which period set forth in the Approved Budget such professional fees are actually allowed and paid. For the avoidance of doubt, in the event the aggregate professional fees incurred during the periods do exceed the amounts set forth in the Approved

---

[3] Provided, however that the permitted variance of 10% shall apply to the Debtors' Professional fee line items limited to only Young Conaway and FTI Consulting and solely for the months of March, April and May 2019.

Budget, nothing herein shall be deemed a waiver of the rights of such professionals to seek an allowed administrative claim against the Debtors' estates for such amounts.

6.    *DIP Liens*.

(a)    *Generally*.  As security for the full and timely repayment of all of the DIP Obligations, the DIP Lenders are hereby granted by the Debtors, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, first priority, valid, binding, enforceable, unavoidable and fully perfected security interests and liens (collectively, the "**DIP Liens**") (subject to sub-paragraph (b) hereof and the Carve-Out) in, against, and upon all real and personal, tangible and intangible property and assets of the Debtors of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all cash (including all Cash Collateral, wherever held), cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, capital stock of the Debtors' subsidiaries, if any, all inter-company notes held by the Debtors, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action, and, upon entry of this Order, and the proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds (all of the foregoing, collectively, the "**DIP Collateral**"), and including (subject to entry of the Final Order) avoidance actions under section 549 and related proceeds and recoveries under section 550 of the Bankruptcy Code in respect of the DIP collateral, but excluding actions for preferences, fraudulent conveyances, and other avoidance power claims

under sections 544, 545, 547, 548, 550, 552(b) and 553 of the Bankruptcy Code (the "**Avoidance Actions**"), but, subject to entry of the Final Order, including the proceeds and recoveries from the Avoidance Actions (the "**Avoidance Action Proceeds**").

        (b)    *Other Priority Matters*.  Notwithstanding anything in this Order to the contrary, the DIP Liens: (a) shall, pursuant to section 364(c)(2) of the Bankruptcy Code, constitute first priority security interests in and liens on all DIP Collateral that is not otherwise subject to any Permitted Prior Lien (as defined below) and (b) shall, pursuant to section 364(c)(3) of the Bankruptcy Code, be immediately junior in priority to any and all Permitted Prior Liens and (c) shall, pursuant to section 364(d) of the Bankruptcy Code, have a priming lien against all assets of the Debtors except for Permitted Prior Liens (but in all cases the DIP Liens shall be subject and junior to the Carve-Out).  As used herein, the term "**Permitted Prior Lien**" shall mean any valid, enforceable, and non-avoidable liens on and security interests in the DIP Collateral that (i) were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), (ii) are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) are senior in priority to the DIP Liens under applicable law and after giving effect to any lien release, subordination or inter-creditor agreements; *provided, however*, that the DIP Liens shall have priority over the Pre-Petition Credit Liens.  As used herein, the term "**Pre-Petition Credit Liens**" means those liens in all of the Debtors' real and personal property granted pursuant to that certain Amended and Restated Credit Agreement dated as of July 9, 2013 and Amended and Restated as of May 24, 2017 among New Publishing Holdings, Inc., as Holdings, F+W Media, Inc., as Borrower, the lender parties thereto and

Cortland Capital Market Services LLC as Administrative Agent (as amended thereafter from time to time, the "**Pre-Petition Credit Agreement**") to the Collateral Agent and Investors (as each is defined therein), which secured loans to the Debtors in the original aggregate principal amount of $50,000,000 (the "**Pre-Petition Secured Debt**"). Any claim held by the Collateral Agent and/or any of the lenders under the Pre-Petition Credit Agreement (the "**Pre-Petition Lenders**") on account of the Pre-Petition Secured Debt or under the Pre-Petition Credit Agreement is referred to herein as the "**Pre-Petition Secured Claim.**" The DIP Liens shall at all times be senior to (i) any security interest or lien which secures any inter-company claim of the Debtors or any subsidiary or affiliate of the Debtors, and (ii) any security interest or lien which is avoided or disallowed or otherwise preserved for the benefit of the Debtors' estates under section 551 or any other provision of the Bankruptcy Code. Upon entry of this Order, the DIP Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination (except as expressly provided in this Order), impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case, in each case without the necessity of the execution or delivery by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent or any DIP Lenders of any DIP Collateral. Other than the Carve-Out and the Prior Permitted Liens, no other liens or security interests, whether for post-petition financing, adequate protection or otherwise, whether arising pursuant to sections 363 or 364 of the Bankruptcy Code or otherwise, shall be senior or equal to or pari passu with the DIP Liens in this Chapter 11 Case or any Successor Case without the express written consent of the DIP Lenders (which consent may be withheld in their sole

discretion).  Notwithstanding anything herein to the contrary, all parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of the Permitted Prior Liens and/or the liens relevant to the Pre-Petition Secured Debt.

7.      *Super-Priority Claims.*  In addition to the DIP Liens, the DIP Lenders are hereby granted, for all DIP Obligations, an allowed super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "**Super-Priority Claim**") against the Debtors and their estates.  The Super-Priority Claim shall have priority over all other costs and expenses of administration of any kind or nature whatsoever (and no cost or expense of administration shall be senior to, equal to, or pari passu with, the Super-Priority Claim), in each case whether incurred in these Chapter 11 Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise, and whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided, however*, that the Super-Priority Claim shall be subject to and junior to the Carve-Out.  The Super-Priority Claim shall at all times be senior to any inter-company claim of the Debtors or any subsidiary or affiliate of the Debtors.  The Super-Priority Claims shall be deemed legal, valid, binding, and enforceable claims and expenses against the Debtors and their estate, and not subject to subordination (except as expressly provided in this Order), impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.  The Super-Priority Claim shall be payable from any and all of the DIP Collateral.

8.      *Modification of Automatic Stay; Termination Date.*

(a)      Except as set forth in sub-paragraph (b) of this paragraph, which sub-paragraph exclusively governs the applicability of the automatic stay to any action by the DIP

Agent and the DIP Lenders to foreclose on the security interests in and liens on any DIP Collateral granted hereunder, the Court hereby orders that (x) the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby vacated as to the DIP Agent and the DIP Lenders to permit such parties to perform the actions described in or permitted by this Order, in each case without further notice, application or motion to, or order from the Court, and (y) neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit such party's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable).  Consistent with the foregoing sentence, the DIP Agent and the DIP Lenders are hereby granted leave to (i) receive and apply payments of the DIP Obligations and proceeds of the DIP Collateral, as applicable, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral provided by this Order, (iii) charge and collect any interest (including at the default rate to the extent authorized herein), fees, costs and other expenses accruing at any time under this Order or the DIP Documents, as applicable and to the extent authorized herein, (iv) give the Debtors and other parties in interest any notice provided for in this Order or the DIP Documents, as applicable, and (v) upon the Termination Date (as defined below), and in each case without further notice, motion or application to, order of, or hearing before, this Court: (A) terminate the DIP Agreement and/or the other DIP Documents, (B) cease making Loans and/or suspend or terminate its lending commitments to the Debtors, (C) accelerate any or all of the DIP Obligations and declare such DIP Obligations immediately due and payable in cash, and/or (D)

revoke the Debtors' right, if any, to use the DIP Collateral, the Cash Collateral, and/or the proceeds of the DIP Financing.

*(b)*    The Court hereby orders that upon five (5) days' notice of the occurrence of the Termination Date (which notice shall be served on counsel to the Debtors, the Committee, and the U.S. Trustee), absent any objection thereto (which objection shall be resolved by the Court), the automatic stay pursuant to section 362 of the Bankruptcy Code shall be vacated without further relief of this Court as to the DIP Agent and the DIP Lenders to permit such parties to, and the DIP Agent and DIP Lenders shall be entitled to, foreclose or otherwise enforce their security interests in and liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Documents, this Order or applicable law in seeking to recover payment of the DIP Obligations.

*(c)*    As used in this Order, the term "**Termination Date**" means the earliest date on which any of the following events (each, a "**Specified Event**") occurs during the Chapter 11 Cases (unless the DIP Lenders otherwise agree in writing in their sole discretion):

(i)    This Court has not entered the Final Order within thirty (30) days after the Petition Date or the Debtors have not executed and delivered to the DIP Agent the Debtor-in-Possession Credit Agreement, which agreement shall be in form and substance acceptable to the DIP Agent;

(ii)    the dismissal of the Chapter 11 Cases or the conversion of the Chapter 11 Cases to ones under Chapter 7 of the Bankruptcy Code (or the Debtors apply for, consents to, or acquiesces in, any such relief);

(iii)    the appointment of an interim or permanent trustee in the Chapter 11 Cases or the appointment of a receiver or an examiner in the Cases with expanded powers relating to the operation or management of the financial affairs, the business, or reorganization of the Debtors (or the Debtors consent to, or acquiesce in, any such relief);

(iv)    the dissolution of the Debtors;

(v) the occurrence of the Termination Date under the DIP Agreement, including, for the avoidance of doubt, the required sale milestones detailed in the DIP Term Sheet and/or DIP Agreement;

(vi) any failure by the Debtors to comply with the Approved Budget, except in conformity with the permitted variance described in Paragraph 5(e) above or as otherwise permitted by the DIP Lenders in writing;

(vii) the entry of an order by this Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a security interest or lien with respect to any portion of the DIP Collateral having a value, individually or in the aggregate, in excess of $200,000;

(viii) the filing of a plan of reorganization or related disclosure statement by the Debtors that does not propose to satisfy the DIP Obligations in full in cash on the effective date of such plan; or

(ix) 150 days after the Petition Date.

9. _Waiver of Section 506(c) Surcharge._ Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Approved Budget) by the Debtors or any other person or entity shall be imposed or charged against any or all of the DIP Agent, DIP Lenders, their respective claims, or their respective collateral under Section 506(c) of the Bankruptcy Code or otherwise, and the Debtors, on behalf of their estates, waive any such rights. It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with this Order, each of the DIP Agent and the DIP Lenders has relied on the foregoing provisions of this paragraph. Notwithstanding any approval of or consent to an Approved Budget, nothing in this Order shall constitute or be deemed to constitute the consent by any of the DIP Agent or the DIP Lenders to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any

amounts set forth in the Approved Budget) against such party, its claims or its collateral under section 506(c) of the Bankruptcy Code or otherwise, and no such consent shall be implied from any other action or inaction by such parties.

10.    *Right to Credit Bid*.  The DIP Lenders shall have the right, pursuant to applicable law, to credit bid the face amount of all accrued and unpaid DIP Obligations during any sale of the DIP Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, whether or not included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code, or otherwise.

11.    *Carve-Out*.

(a)    *Generally*.  Notwithstanding anything to the contrary contained in this Order, the liens and claims granted to the DIP Lenders in this Order and the DIP Documents shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**");

(i)    quarterly fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), plus interest, if applicable, at the statutory rate, and any fees payable to the clerk of the Bankruptcy Court;

(ii)    the claims of counsel to the Debtors, whose retention is approved by this Court during the Chapter 11 Cases pursuant to Sections 327 and 328 of the Bankruptcy Code, (collectively, the "**Debtors' Professionals**") for unpaid fees and expenses which were incurred at any time on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $125,000; plus the claims of the Debtors' Professionals for unpaid fees and expenses which were incurred at any time on and after the Petition Date and before the Carve-Out Trigger Date, but such claims shall not exceed the aggregate amounts for such Debtors' Professionals expressly set forth in the Approved Budget for such period; provided that, in each case, such fees and expenses of the Debtors' Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code and are not excluded from the Carve-Out under paragraph 16 of this Order; and

(iii)    the claims of counsel to the Committee, whose retention is approved by this Court during the Chapter 11 Cases pursuant to Sections 1103 of the Bankruptcy Code, (collectively, the "**Committee's Professionals**" and together with the Debtors' Professionals, the "**Retained Professionals**") for unpaid fees and expenses which were incurred at any time on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $25,000; plus the claims of the Committee's Professionals for unpaid fees and expenses which were incurred at any time on and after the Petition Date and before the Carve-Out Trigger Date, but such claims shall not exceed the aggregate amounts for such Committee's Professionals expressly set forth in the Approved Budget for such period; provided that, in each case, such fees and expenses of the Committee's Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code and are not excluded from the Carve-Out under paragraph 16 of this Order.

(b)    *Carve-Out Trigger Date*.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the DIP Agent or the DIP Lenders provides written notice to the Debtors (i) of the occurrence and continuation of a Specified Event beyond any applicable cure period (if any) or the Termination Date and (ii) that the Carve-Out Trigger has occurred.

(c)    *Reduction of Amounts*.  Subject to the terms and conditions of this Order and the DIP Documents, the Debtors shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, as the same may be due and payable, and such payments shall not, prior to the Carve-Out Trigger Date, reduce or be deemed to reduce the Carve-Out.  The dollar amounts available to be paid under the Carve-Out shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date to the Retained Professionals on account of their allowed fees and expenses (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).  Pending final approval of the fees and expenses of the Retained Professionals, the amounts budgeted for the Retained Professionals in the Approved Budget shall, at the option of the applicable Retained Professional, either (i) be funded by the Debtors to each applicable professional or (ii) subject to

the Interim Amount, be wired by the DIP Agent to each applicable professional, in each case on a weekly basis to be held (and unapplied) in such professional's retainer/escrow account until such time as such fees and expenses may be approved by this Court for application to such retainer/escrow.

(d)    *Reservation of Rights*.  Payment of any fees and expenses of the Retained Professionals pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce the Debtors' obligations owed to any of the DIP Agent or DIP Lenders or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral (or their respective claims against the Debtors), except in the fact that such liens and security interests are junior to the Carve-Out.  Nothing herein shall impair, or be construed to impair, the ability of any party to object to any of the fees, expenses, reimbursement or compensation of the Retained Professionals in these Chapter 11 Cases.

12.    *Cash Collateral; Adequate Protection*.   For purposes of this Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall include all of the cash proceeds of the DIP Collateral in which any of the DIP Agent or the DIP Lenders has an interest, whether such interest existed as of the Petition Date, or arises thereafter pursuant to this Order, any other order of this Court, the DIP Documents, applicable law or otherwise.  The Pre-Petition Lenders are entitled to adequate protection on account of the Pre-Petition Secured Claims as set forth herein.  As adequate protection to the Pre-Petition Lenders which are "Tranche B-1 Term Lenders" (as defined in the Pre-Petition Credit Agreement), they are hereby granted (i) replacement liens on all collateral granted under the DIP Facility, junior only to the liens granted under the DIP Facility (including,

for the avoidance of doubt, the Prior Permitted Liens and the Carve-Out), (ii) adequate protection payments equal to the amount of non-default contractual interest that accrues from and after the Petition Date under the Pre-Petition Debt held by such Pre-Petition Lenders and which shall be paid in kind by being capitalized and treated as principal on the first business day of each month; provided, however, that such adequate protection payments shall not constitute administrative claims against the estates and shall be treated as part of the Tranche B-1 obligations under the Pre-Petition Credit Agreement, and (iii) a superpriority administrative expense claim, to the extent of diminution of value of their collateral, junior only to the Super-Priority Claim and the Carve-Out.  As adequate protection to the Pre-Petition Lenders which are "Tranche B-2 Term Lenders" (as defined in the Pre-Petition Credit Agreement), they are hereby granted replacement liens on all collateral granted under the DIP Facility, to the extent of diminution of value of their collateral, junior only to the liens granted under the DIP Facility (including, for the avoidance of doubt, the Prior Permitted Liens and the Carve-Out) and the adequate protection liens granted to the Tranche B-1 Term Lenders.  For the avoidance of doubt, all adequate protection granted to the Pre-Petition Lenders is subject to the priorities agreed to in the Pre-Petition Credit Agreement.

13.    _Covenants_.  Except as expressly provided in this Order, the DIP Documents or as approved in writing by the DIP Agent or the DIP Lenders, the Debtors (i) shall not transfer any Cash Collateral or proceeds of the DIP Financing to any of their non-Debtor affiliates or subsidiaries, and (ii) shall not sell, lease, transfer, or otherwise dispose of any DIP Collateral other than in the ordinary course of the Debtors' business and/or as authorized by this Court in connection with the Debtors' "first day" motions; provided that should the Debtors sell, lease,

transfer, or otherwise dispose of DIP Collateral consisting of a Qualifying Collateral Sale (as defined in the DIP Agreement), the DIP Lenders (or the DIP Agent) may require a prepayment of the outstanding Obligations in the amount of the proceeds of such sale(s) or any subset thereof.  For the avoidance of doubt, the proceeds of any Qualified Collateral Sale shall be subject to the Carve-Out.

14. *Perfection of DIP Liens.*

(a) The DIP Liens shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the entry of this Order without any further notice, act or action of or by any person or entity, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, filings with the U.S. Copyright Office, or other documents.  If the DIP Lenders hereafter request that the Debtors execute and deliver to them any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such party to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests provided under this Order, then the Debtors shall, at their sole cost and expense, promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Lenders (directly or through the DIP Agent) are hereby authorized to file or record such documents in their discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order, but with the priorities as set forth herein.

(b)    DIP Lenders (directly or through the DIP Agent) may, but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which the Debtors have real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of their interests in the DIP Collateral at the time and on the date of entry of this Order, but with the priorities as set forth herein.

(c)    To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized or created under or in connection with this Order or the DIP Documents, or otherwise would impose filing or registration requirements with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of this Court.

(d)    Except as otherwise expressly provided herein, notwithstanding anything to the contrary contained in any prepetition or post-petition agreement, contract, lease, document, note or instrument to which the Debtors are a party or under which the Debtors are obligated or bound, any provision therein that restricts, conditions, prohibits, limits or impairs in any way the Debtors from granting the DIP Agent and DIP Lenders the post-petition claims, security interests or liens upon any of their assets, properties or other DIP Collateral or otherwise entering into and complying with all of the terms, conditions and provisions of this Order and DIP Documents shall not adversely affect the validity, priority, perfection or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to such parties pursuant to this Order and DIP Documents.

15.     *Preservation of Rights Granted Under This Order; 364(e) Protection.*

(a)     *Survival*.  The provisions of this Order and any actions taken pursuant hereto: (a) shall survive the occurrence of the Termination Date and/or the entry of any order: (i) converting the Chapter 11 Cases to ones under chapter 7 of the Bankruptcy Code; (ii) substantively consolidating the Debtors or their estates, or substantively consolidating the Debtors or their estates with any affiliate or subsidiary; (iii) dismissing or closing the Chapter 11 Cases or (iv) confirming a plan of reorganization in the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive any discharge as to the DIP Obligations); and (b) shall continue in full force and effect notwithstanding the occurrence of the Termination Date and/or the entry of any such order described above.  The claims, liens, and security interests granted pursuant to this Order shall maintain their priority, validity and perfection as provided by this Order until all of the DIP Obligations are indefeasibly paid in full in cash and discharged (and all lending commitments terminated under the DIP Financing) in accordance with the respective terms and conditions of this Order and the DIP Documents.

(b)     *Section 364(e); Effect of Modification or Appeal*.  Based on the findings set forth in this Order, in consideration for the financing provided under DIP Financing, the DIP Agent and the DIP Lenders are entitled to, and hereby are granted, the full rights, benefits, privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code with respect to the DIP Obligations (and related liens, claims, rights, remedies and benefits) created or authorized by this Order in the event that this Order or any authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal.  Any subsequent stay, modification, reversal, amendment or vacation of this Order shall not alter,

modify or affect the validity, priority, perfection or enforceability of any claim, lien, or security interest of the DIP Agent or the DIP Lenders authorized, created or granted pursuant to this Order or the DIP Documents and outstanding immediately prior to the actual receipt of written notice by the DIP Agent of the effective date of such stay, modification, reversal, amendment or vacation. Notwithstanding any such stay, modification, reversal, amendment or vacation, all obligations and other financial accommodations made or incurred pursuant to this Order or the DIP Documents, all DIP Obligations incurred and uses of Cash Collateral by the Debtors pursuant hereto prior to the actual receipt of written notice by the DIP Agent of the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions of this Order and the DIP Agent and the DIP Lenders shall be entitled to all of the rights, privileges, remedies, protections and benefits contained or granted in section 364(e) of the Bankruptcy Code, the DIP Documents, and this Order, including, without limitation, the DIP Liens and Super-Priority Claims, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

16.     *Limitation on Use of DIP Financing and DIP Collateral.*     Notwithstanding anything herein to the contrary, no portion or proceeds of the DIP Financing, the DIP Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Approved Budget, shall be used in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of any amount due under the DIP Documents or any security interests, liens or claims granted under this Order or the DIP Documents to secure such amounts; (b) asserting any claims, actions or causes of action against any of the DIP Agent or the DIP Lenders or any of their respective affiliates or subsidiaries; (c) preventing, hindering or

{00290789.2 / 1280-001 }

01:24255533.2

otherwise delaying any of the DIP Agent's or the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the terms and conditions of this Order and the DIP Documents; (d) seeking to amend or modify any of the rights granted to the DIP Agent or the DIP Lenders under this Order or the DIP Documents, in each case without such party's prior written consent given in its sole discretion; or (e) for any other purpose prohibited under Section 5.11(b) of the DIP Agreement.  For the avoidance of doubt, and in accordance with Section 5.11(b) of the DIP Agreement, nothing herein shall be interpreted to deny that an amount up to but not exceeding $25,000 may be used by any Creditors' Committee to conduct an investigation of the propriety or effectiveness of the liens granted in connection with the Pre-Petition Credit Agreement.

17.     _No Marshaling_.  In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

18.     _No Subrogation_.  In no event shall any Person who pays (or through the extension of credit to the Debtors, causes to be paid) any of the DIP Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon, the DIP Agent or any DIP Lender by the terms of the DIP Documents or this Order, unless and until such time as all of the DIP Obligations have been indefeasibly paid in full in cash and all lending commitments have been terminated under the DIP Financing.

19.     _No Implied Waiver_.  The failure, at any time or times hereafter, of the DIP Agent or the DIP Lenders to require the strict performance by the Debtors of any term or provision of this Order shall not waive, affect or diminish any right of such parties thereafter to demand the strict compliance and performance therewith.  No delay on the part of any party in the exercise of

{00290789.2 / 1280-001 }

01:24255533.2

any right or remedy under this Order or the DIP Documents shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Order or the DIP Documents shall be deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension or waiver is in writing and signed by the party against whom such amendment, modification, suspension or waiver is sought. None of the DIP Agent or the DIP Lenders waives, and each expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has or may have pursuant to any or all of the DIP Documents, the Bankruptcy Code and/or under applicable law against or with respect to the Debtors and any other Person. Except as expressly provided in this Order, the obligations of the Debtors, and the rights, remedies, and priorities of the DIP Agent and the DIP Lenders arising under or in connection with this Order, are in addition to, and are not intended as a waiver or substitution for, those granted to, or contained in favor of, such parties under any or all of the DIP Documents, the Bankruptcy Code and/or under applicable law.

20.     *Order Governs*.  In the event of any conflict between the provisions of this Order and any of the DIP Documents, the provisions of this Order shall control and govern to the extent of such conflict.

21.     *Successors and Assigns*.  The provisions of this Order and the DIP Documents shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Debtors and their estates, and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates, whether in these Chapter 11 Cases or any Successor Case.

22.    *No Liability to Third Parties*.    In making decisions to advance loans to the Debtors, in administering any loans, in permitting the Debtors to use Cash Collateral, in approving any budget or in taking any actions permitted by this Order or the DIP Documents, as applicable, the DIP Agent and the DIP Lenders shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), and/or (ii) owe any fiduciary duty to the Debtors, their creditors or their estates, and their relationship with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership with the Debtors.

23.    *No Consent to Plan of Reorganization*.    Nothing in this Order is, or shall be deemed to be, the consent to, or agreement to support, any plan of reorganization filed by the Debtors or any other party in these Chapter 11 Cases. The rights, defenses and objections of all parties in connection therewith are hereby reserved.

24.    *No Third Party Rights*.    Except as expressly provided for herein, this Order does not create any rights for the benefit of any third party, whether as direct, indirect, or incidental beneficiary.

25.    *Effectiveness*.    This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order. Any objections and reservations of rights to the Motion with respect to the entry of this Order that have not been withdrawn, waived, or resolved are hereby

{00290789.2 / 1280-001 }

01:24255533.2

denied and overruled.  Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

26.   *Final Hearing*.  The Motion is set for a final hearing (the "**Final Hearing**") to be held on April 8, 2019 at 1:00 p.m. (Eastern time), before the Honorable Kevin Gross, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom #3, Wilmington, Delaware 19801 with an objection deadline of 4:00 p.m. (Eastern time) on March 26, 2019 (the "**Objection Deadline**").  Any objection to entry of the Final Order shall be filed with this Court, and served upon the respective counsel to the Debtors, the U.S. Trustee, the Committee, (if any), and the DIP Agent so as to be actually received, on or before the Objection Deadline.  The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the Notice Parties and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been hired.

Dated:   March 12, 2019

Kevin Gross
United States Bankruptcy Judge