**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>F+W MEDIA, INC., *et al.*,[1]<br><br>           Debtors. | Chapter 11<br><br>Case No. 19-10479 (KG)<br><br>(Jointly Administered)<br><br>**Bid Procedures Hearing Date: April 16, 2019 at 1:00 p.m. (ET)**<br>**Bid Procedures Objection Deadline: April 9, 2019 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ORDERS: (I) APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THE COMMUNITIES BUSINESS LINE; AND (B) FORM AND MANNER OF NOTICES; (II) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE, INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF; AND (IV)(A) APPROVING THE SALE OF THE ACQUIRED ASSETS; (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, "Debtors" or the "Company"), hereby move (this "Motion"), pursuant to sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3007, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order (the "Bidding Procedures Order"), substantially in the form attached hereto as Exhibit A: (a) approving bidding procedures substantially in the form attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures") to govern the sale of substantially all of the assets

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: New Publishing Holdings, Inc. (4101); F+W Media, Inc. (5953); F+W Subscription Services, LLC (3663); F+W Trade Show & Events, LLC (0268); F+W OH e-Commerce, LLC (3762); Former Quilting Inc. (7854); The Writers Store, Inc. (6951); F & W Media International Limited (UK Registered No. 04003207); and F+W NH e-Commerce, LLC (9731). The headquarters for the above-captioned Debtors is 1140 Broadway, 14th Floor, New York, New York 10001.

related to the Debtors' Communities business ("Communities" or the "Acquired Assets"); (b) approving the form and manner of notices in connection with Bidding Procedures; (c) scheduling dates to conduct an auction to sell Communities (the "Auction") and a hearing (the "Sale Hearing") to consider final approval of the sale of Communities (the "Sale"), including treatment of executory contracts and unexpired leases; and (d) granting related relief. By this Motion, the Debtors also seek, pursuant to sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, entry of an order (the "Sale Order")[2] at the Sale Hearing: (a) approving the Sale free and clear of all liens, claims, encumbrances, and interests; (b) authorizing the assumption and assignment of executory contracts and unexpired leases; and (c) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] The proposed form of Sale Order will be filed with the Court on the date that is two business days prior to the Sale Hearing.

3. The statutory bases for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 3007, 6004, 6006, 9007, and 9014, and Local Rule 6004-1.

## BACKGROUND

### A. General Background

4. On March 10, 2019 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 21, 2109, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors for these cases (the "Committee").

5. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Gregory J. Osberg in Support of Chapter 11 Petitions and First-Day Motions* [D.I. 2] (the "First Day Declaration"),[3] filed on the Petition Date.

### B. The Communities Business Line

6. As set forth more fully in the First Day Declaration, the Company runs two business lines which it primarily operates through F+W Media, Inc. ("F+W Media") - the Communities business line and the F+W Books business line.

7. Communities is a diversified multi-media company owning and operating print and digital media platforms to provide content distribution and marketing channels to a variety of enthusiast audiences. Headquartered in New York, New York, Communities segments its media

---

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the First Day Declaration.

01:24295850.4

3

into ten enthusiast categories or "Communities," including Crafts, Artist's Network, Collectibles, Writing, Outdoors, Sky & Telescope, Woodworking, Family Tree, Construction, and Horticulture.

8.  In conjunction with its main business of print magazines, Communities utilizes websites, e-Commerce platforms, online video streaming, social media, membership platforms, eLearning, and other channels to distribute content and sell products and advertising corresponding to the Communities' interests. In 2018, Communities published, in magazines and periodicals alone, over 400 unique issues of industry leading unique content circulated through over fifty titles weekly, monthly, quarterly, and annually. The Communities' print publications are collectively circulated to over thirteen million people annually and digital page views exceed seventeen million per month on average. Communities' annual revenue in 2018 was approximately $67.7 million.

**C.  Prepetition Marketing and Sales Efforts**

9.  The Debtors' commenced the Chapter 11 Cases to maximize the value of their estates for the benefit of their creditor constituencies and other stakeholders through the sale of Communities and F+W Books.[4] To this end, in February of 2019, the Company began working with FTI's investment banking team to focus on preparing and running the Communities sale process.

10.  Prior to the Petition Date, FTI's banking team, which specializes in sales of distressed businesses, spent significant time with the Company's management team, developed an executive summary for Communities, developed a financial model and forecast, created an

---

[4] Contemporaneously herewith, the Debtors filed a separate motion seeking approval of bidding procedures to govern the sale of F+W Books.

initial buyer list from FTI's and the Company's relationships, prepared an electronic data site, and began working on a Confidential Information Memorandum and management presentation.

11. FTI launched the sale process for Communities in mid-March and, as of March 26, 2019, has already reached out to approximately one hundred parties and connected with approximately sixty parties. The Debtors hope to consummate a sale of Communities by the middle of June.

## THE BIDDING PROCEDURES

12. A summary of the following provisions set forth in the Bidding Procedures Order and the accompanying Bidding Procedures is set forth below, pursuant to Local Rule 6004-1(c):

| **Provisions Governing the Qualification of Bidders**<br><br>Bidding Procedures §§ 2–3 | A "Qualified Bidder" is a Potential Bidder: (i) who has delivered (a) an executed confidentiality agreement on terms acceptable to the Debtors; and (b) proof by the Potential Bidder of its financial capacity to close a transaction, including payment of any cure amount with respect to any contract that may be assigned, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and their advisors will determine in consultation with the Committee and the DIP Lenders (as defined in the *Interim Order (i) Authorizing the Debtors to Obtain Postpetition Secured Financing and Use Cash Collateral; (ii) Modifying the Automatic Stay; and (iii) Scheduling a Final Hearing* [D.I. 42]); and (ii) whose Bid is a Qualified Bid. Both the lenders under the Pre-Petition Credit Agreement[5] and the DIP Lenders shall each be deemed a Qualified Bidder. |
|---|---|
| **Provisions Governing Qualified Bids:**<br><br>Bidding Procedures § 7 | A proposal, solicitation, or offer (each, a "Bid") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (collectively, the "Bid Requirements"), as determined by the Debtors in their reasonable business judgment, in consultation with the Committee and the DIP Lenders, shall constitute a "Qualified Bid."<br><br>a. **Assets.** Each Bid must clearly state which Assets the Qualified Bidder is agreeing to purchase, and which liabilities of the Debtors the Qualified Bidder is agreeing to assume ("Assumed Liabilities"). |

---

[5] The Pre-Petition Credit Agreement means that certain Amended and Restated Credit Agreement, dated as of May 24, 2017, among New Publishing Holdings, Inc., F+W Media, Inc., as the Borrower, the several banks and other financial institutes or entities from time to time parties thereto, as lenders.

01:24295850.4

5

  b. **Purchase Price.**  Each Bid must clearly set forth the purchase price to be paid, including and identifying separately any cash and non-cash components (the "Purchase Price").

  c. **Deposit**.  With its Bid, each Potential Bidder must submit by wire transfer of immediately available funds, a cash deposit in the amount equal to 7.5% of the aggregate cash and non-cash Purchase Price set forth in the Bid,[6] to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Deposit").

  d. **Qualified APA**.  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Sale and shall include a schedule of assumed contracts to the extent applicable to the Bid, and a copy of the asset purchase agreement (together with a copy of the signed agreement that is marked to show changes from the Form APA), including those related to the respective Purchase Price and Assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such Bid (the "Qualified Bid Documents").

  e. **Contingencies; No Financing or Diligence Outs**.  A Bid shall not be conditioned on: (i) obtaining financing; (ii) shareholder, board of directors, or other internal approval; or (iii) the outcome or completion of a due diligence review by the Potential Bidder.  Notwithstanding the foregoing, a Bid may be subject to (i) the accuracy at the closing of the Sale of specified representations and warranties and (ii) the satisfaction at the closing of the Sale of specified conditions.

  f. **Identity**.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the Sale), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid.

  g. **Demonstrated Financial Capacity**.  A Qualified Bidder must have, in the Debtors' business judgment, in consultation with the Committee and the DIP Lenders, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

  h. **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the satisfaction of the Debtors, in consultation with the Committee and the DIP Lenders, which demonstrates that the Potential Bidder has received

---

[6] In determining the amount of the Deposit, the implied value of any securities to be provided as consideration under the Bid must be included, but the value of the Assumed Liabilities may be excluded.

| | |
|---|---|
| | sufficient debt or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid.<br>i. **Binding and Irrevocable**. A Qualified Bid must be irrevocable unless and until the Debtors accept a higher or otherwise better Bid and such Qualified Bidder is not selected as the Backup Bidder (as defined herein).<br>j. **Expenses; Disclaimer of Fees**. Each Bid must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.<br>k. **Authorization**. Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.<br>l. **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to submitting the Bid; (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Qualified Bid Documents.<br>m. **Adherence to Bid Procedures**. By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.<br>n. **Consent to Jurisdiction**. Each Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the development and enforcement of these Bidding Procedures, the Sale documents, and the closing of the Sale, as applicable.<br>o. **Bid Deadline.** Each Bid must be transmitted by email (in pdf or similar format) so as to be <u>actually</u> <u>received</u> on or before 5:00 p.m. (prevailing Eastern Time) on May 28, 2019 (the "<u>Bid Deadline</u>") by the Notice Parties. |
| **Form APA**<br>Bidding Procedures §§ 5, 7(d) | The Debtors are in the process of preparing a form of asset purchase agreement (the "<u>Form APA</u>") for the sale of the Assets, which will be filed with the Court and provided to prospective purchasers. As part of the Qualified Bid Documents, each Qualified Bidder must include a |

| | |
|---|---|
| | copy of the asset purchase agreement together with a copy of the signed agreement that is marked to show changes from the Form APA. |
| **Modifications of Bidding Qualifications or Auction Procedures**<br><br>Bidding Procedures § 11. | The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, in consultation with the Committee and the DIP Lenders, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (i) extending the deadlines set forth in these Bidding Procedures; (ii) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; and (v) rejecting any or all Bids. |
| **Ability to Select a Stalking Horse Bidder**<br><br>Bidding Procedures § 6 | Following entry of the Bidding Procedures Order, the Debtors shall be authorized, but not obligated, in consultation with the Committee and the DIP Lenders, to select one or more potential bidders to act as a stalking horse bidder (a "Stalking Horse Bidder") for all or any portion of the Assets (which Stalking Horse Bidder may be the Lenders pursuant to a credit bid or otherwise), and may agree to provide such Stalking Horse Bidder(s) certain bid protections, including an expense reimbursement and/or a break-up fee (the "Bid Protections"); *provided* that any such Bid Protections shall be subject to approval by the Court, which the Debtors may seek on an expedited basis pursuant to section 105(a) of the Bankruptcy Code and Local Rule 9006-1(e). |
| **Closing with Alternative Backup-Bidders**<br><br>Bidding Procedures § 10 (c). | If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may, in consultation with the Committee and the DIP Lenders, select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance. |

## **RELIEF REQUESTED**

13. By this Motion, the Debtors request entry of the Bidding Procedures Order and, at the Sale Hearing, entry of the Sale Order that will (i) designate the entity or entities submitting the highest or otherwise best Qualified Bid (the "Successful Bid") as the successful bidder ("Successful Bidder") and approve the Sale in accordance with the asset purchase agreement (the

"Asset Purchase Agreement") between the Debtors and the Successful Bidder, which Sale shall be free and clear of all liens, claims, encumbrances, and other interests (other than expressly specified permitted encumbrances and assumed liabilities, all as more specifically set forth in the Successful Bid), (ii) approve the assumption and assignment of certain executory contracts and unexpired leases related to the Acquired Assets and the Sale, and (iii) grant related relief.

## BASIS FOR RELIEF

**A.    Necessity of the Sale**

14.    The Debtors' primary goal is the maximization of the value of their estates for the benefit of all creditor constituencies and stakeholders.  The Bidding Procedures allow the Debtors to continue a thorough prepetition sale process to further this goal.  The Debtors, in concert with their advisors, have examined thoughtfully and thoroughly a range of viable alternatives, including potential out-of-court solutions and strategies for executing a meaningful, feasible restructuring of the Debtors' extant obligations.  Ultimately, the Debtors and their advisors have concluded that the sale strategy outlined herein is the best available strategy for realizing the full value for Communities, while maximizing certainty of an orderly sale process.

15.    The Debtors submit that the duration of the prepetition and postpetition marketing window will provide ample opportunity for third parties to conduct diligence and obtain financing to put forward Qualified Bids.

16.    Without the process described in the Motion and Bidding Procedures, the Debtors believe, in the exercise of their business judgment, that their creditors and stakeholders are unlikely to receive maximum value for Communities.

**B.    Approval of the Bidding Procedures**

17.    The Bidding Procedures are designed to maximize the value of Communities, while ensuring an orderly sale process.  The Bidding Procedures describe, among other things,

the procedures for interested parties to access and conduct due diligence, the manner in which bidders will become "qualified," the conduct of the Auction, selection and approval of the Successful Bidder and Backup Bidder, and key deadlines. The Debtors believe that the Bidding Procedures afford them the best possible opportunity to maximize the amount received through the Sale by setting the baseline for bids, while facilitating robust bidding by qualified entities.

**C.     Assumption and Assignment Procedures**

18.     As contemplated in the Asset Purchase Agreement, at the closing of the Sale, the Debtors intend to assume certain executory contracts and unexpired leases designated by the Successful Bidder (the "<u>Assigned Contracts</u>") pursuant to section 365(b) of the Bankruptcy Code and assign such Assigned Contracts to the Successful Bidder pursuant to section 365(f) of the Bankruptcy Code. The Debtors accordingly are seeking approval of proposed procedures to govern the assumption and assignment of all Assigned Contracts (the "<u>Assumption and Assignment Procedures</u>"). Because the Assumption and Assignment Procedures are set forth in detail in the attached Bidding Procedures Order, they are not restated herein. Generally speaking, however, the Assumption and Assignment Procedures: (i) outline the process by which the Debtors will serve notice, in substantially the form attached as Exhibit 3 to the Bidding Procedures Order, to all non-Debtor counterparties to the potential Assigned Contracts regarding the proposed assumption and assignment and related cure amounts, if any; and (ii) establish objection and other relevant deadlines and the manner for resolving disputes relating to assumption and assignment of Assigned Contracts.

**D.     Notice Provisions**

19.     On or before five days after entry of the Bidding Procedures Order, the Debtors propose to serve the sale notice, substantially in the form attached to the Bidding Procedures

Order as Exhibit 2 (the "Sale Notice"), on all Notice Parties (as defined in the Bidding Procedures Order) and creditors appearing on the Debtors' creditor matrix.

20. The Debtors also propose, pursuant to Bankruptcy Rules 2002 and 6004, to publish a version of the Sale Notice once in the national edition of *The New York Times, USA Today*, or the *Wall Street Journal* as soon as practicable after entry of the Bidding Procedures Order.

### E. Appointment of Consumer Privacy Ombudsman Is Not Required

21. No Debtor has, in connection with offering a product or a service, disclosed to any individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the Debtors, and no such policy is in place on the Petition Date. *See* 11 U.S.C. § 363(b)(1)(B). As such, there is no need for the Court to appoint a consumer privacy ombudsman in accordance with section 332 of the Bankruptcy Code.

## APPLICABLE AUTHORITY

### A. Approval of the Sale is Appropriate Under Section 363 of the Bankruptcy Code.

22. The Sale should be approved as a sound exercise of the Debtors' business judgment. Section 363 of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991). Once a court determines that a valid business justification exists for a sale outside of the ordinary course of business, the court

must determine whether (i) adequate and reasonable notice of the sale was given to interested parties, (ii) the sale will produce a fair and reasonable price for the property, and (iii) the parties have acted in good faith.  *See In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012); *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008).  As described below, the proposed Sale meets each of these requirements.

### 1. The Sale Represents a Sound Exercise of the Debtors' Business Judgment.

23.    Here, a strong business justification exists for the Sale.  As described above, the Debtors have concluded that an expedited sale of Communities to the Successful Bidder represents the best value-maximizing opportunity for these assets.  As a result, an expeditious sale of the Acquired Assets is a reasonable exercise of the Debtors' business judgment and is in the best interests of all of the Debtors' stakeholders.

### 2. The Bidding Procedures are Fair and Designed to Maximize the Value Received for the Acquired Assets.

24.    The Debtors believe that the Bidding Procedures satisfy each of the remaining requirements for approval of a sale under section 363 of the Bankruptcy Code by (i) providing sufficient notice of each element of the proposed sale process, (ii) facilitating a value-maximizing sale, and (iii) ensuring an unbiased and good-faith sale process.  The detailed Bidding Procedures provide notice designed to fully inform all parties with a stake in the sale process regarding the portions of the sale process most relevant to their interests.  For example, the Bidding Procedures ensure that any entities asserting an interest in Communities and parties to the Assigned Contracts will receive notice of the proposed Sale, the procedures for objecting to the Sale, and the proposed assumption and assignment of their respective contracts or leases.  Similarly, the Bidding Procedures outline all material aspects of the potential purchaser notification, bid qualification, due diligence, bid submission, bid selection, and Auction process,

including the timing for each.  Thus, the Bidding Procedures provide assurance to each entity potentially interested in purchasing the Acquired Assets that their respective rights will be protected and the Sale process will be fair and reasonable.

25. Further, the Bidding Procedures provide the Debtors with the opportunity to consider all competing offers and to select, in their reasonable business judgment, and after consultation with the Creditors' Committee, the best offer for Communities.  Moreover, the Bidding Procedures provide the Debtors with the flexibility to modify the Bidding Procedures, if necessary, to maximize value for the Debtors' estates.  Accordingly, the Debtors believe the Court should approve the Bidding Procedures.

**B.      The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Interests.**

26. The Sale also meets the requirements to be a sale free and clear of liens, claims, interests, and encumbrances.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

27. A sale that meets the requirements for a sale free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code also bars

claimants from asserting successor liability against the successful purchaser. *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288–90 (3d Cir. 2003) (holding that sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program ); *Amphenol Corp. v. Shandler (In re Insilco Techs., Inc.)*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory).

28. The Debtors request that any creditor that receives notice of the Sale Hearing and who fails to timely file an objection to the Sale be deemed to have consented under section 363(f)(2) of the Bankruptcy Code to a sale free and clear of such creditor's interests, if any.

**C.     A Successful Bidder Should Be Afforded the Protections
of Section 363(m) of the Bankruptcy Code.**

29. Pursuant to section 363(m) of the Bankruptcy Code, a good-faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986); *Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs., Ltd.* (*In re Mark Bell Furniture Warehouse, Inc.)*, 992 F.2d 7, 8 (1st Cir. 1993).

30. The Debtors will present facts at the Sale Hearing to demonstrate that the Asset Purchase Agreement was negotiated at arm's length, with both parties represented by their own counsel. Accordingly, the Debtors request that the Sale Order include a provision concluding that the Successful Bidder is a "good-faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code. The Debtors believe that providing the Successful Bidder with such protection will ensure that the maximum price will be received by the Debtors and the closing of the same will occur promptly.

**D.    Assumption and Assignment of the Assigned Contracts Should be Authorized.**

31.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Further, section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance . . . is provided."  11 U.S.C. § 365(f)(2). Assumption and assignment of the Assigned Contracts in connection with the Sale is appropriate.

      **1.    Assumption of the Assigned Contracts is a Reasonable Exercise of the Debtors' Business Judgment.**

32.    Assumption or rejection of a contract is a matter of the debtor's business judgment. *See Nat'l Labor Relations Bd. v. Bildisco and Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd sub nom.*, *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 (1984) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *In re Physiotherapy Holdings, Inc.*, 506 B.R. 619, 622 (Bankr. D. Del. 2014) (citing *In re Federal Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003)).  A debtor's decision in this regard is "entitled to great deference from the Court." *See In re Armstrong World Indus.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006).  To satisfy the business judgment test, a debtor must only show that assumption or rejection of an executory contract will benefit the estate. *See Bildisco*, 682 F.2d at 79; *see also In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) ("Under the business judgment standard, the sole issue is whether the rejection benefits the estate.").

33.    To facilitate the Sale and to maximize the value received for Communities, the Debtors request approval under section 365 of the Bankruptcy Code of the Debtors' assumption

and assignment of the Assigned Contracts to the Successful Bidder. Certain of the Debtors' executory contracts and unexpired leases will be necessary for the Successful Bidder's continued operation of Communities.

34. The Debtors further request that the Sale Order provide that the Assigned Contracts will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder, notwithstanding any provisions in the Assigned Contracts, including those described in sections 365(b)(2), 365(f)(1), and 365(f)(3) of the Bankruptcy Code that prohibit such assignment.

35. The Debtors also request that the Sale Order provide that to the extent any provision in any Assigned Contract assumed and assigned (i) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, such assumption or assignment (including, without limitation, any "change of control" provision), or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (a) the commencement of the Chapter 11 Cases; (b) the insolvency or financial condition of the Debtors at any time before the closing of the Chapter 11 Cases; (c) the Debtors' assumption or assumption and assignment (as applicable) of such Assigned Contract; or (d) the consummation of the Sale, then such provisions shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict or condition such assumption or assignment, to modify, terminate, or declare a breach or default under such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Assigned Contract, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith. The

Debtors request that all such provisions be deemed to constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

> **2. Any Defaults Under the Assigned Contracts Will be Cured and Evidence of Adequate Assurance of Future Performance by the Successful Bidder Will be Provided.**

36. Once an executory contract or unexpired lease is assumed, the trustee or debtor in possession may generally elect to assign such contract, so long as it cures any defaults and provides adequate assurance of future performance. *See* 11 U.S.C. § 365(f)(2)(B) (stating that a debtor may assign an executory contract or unexpired lease of nonresidential property if "adequate assurance of future performance by the assignee of such contract or lease is provided"). The requirements to show "adequate assurance of future performance" will depend on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009); *see also Cinicola v. Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001); *In re Decora Indus.*, No. 00-4459 (JJF), 2002 WL 32332749, at *8 (D. Del. May 20, 2002) ("[A]dequate assurance falls short of an absolute guaranty of payment."). Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when the prospective assignee of a lease from the debtors has the financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding).

37. The Debtors contemplate that the Successful Bidder will be able to provide adequate assurance of future performance in connection with any Assigned Contracts because such Successful Bidder must submit evidence sufficient to demonstrate its financial wherewithal

and ability to consummate the Sale. The Debtors will present facts at the Sale Hearing to show the financial credibility, willingness, and ability of the Successful Bidder to perform under the Assigned Contracts. The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Assigned Contracts, as required under section 365(f)(2)(B) of the Bankruptcy Code.

38. Moreover, the Debtors have proposed to file a notice containing a list of the proposed Assigned Contracts and the Cure Amounts that the Debtors believe are due under each such proposed Assigned Contract. The Debtors will serve a Cure Notice on all Contract Notice Parties and provide them with an opportunity to be heard. In the absence of an objection by a non-Debtor party to a proposed Assigned Contract, the Contract Notice Party will receive the specified Cure Amount, if any, at the closing of the Sale with funds paid by the Successful Bidder as required under the Successful Bid.

39. Accordingly, the Debtors submit that implementation of the Assumption and Assignment Procedures regarding assumption and assignment of the Assigned Contracts is appropriate in this case. The Court, therefore, will have a sufficient basis to authorize the Debtors to assume and assign the Assigned Contracts as will be set forth in the Successful Bid.

**WAIVER OF BANKRUPTCY RULE 6004(h) AND 6006(d); AUTOMATIC STAY**

40. To implement the foregoing immediately, the Debtors seeks a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) and the assumption and assignment of the Assigned under Bankruptcy Rule 6006(d).

41. Here, a waiver of the stay is appropriate because Communities will have been extensively marketed and notice of the Sale will be adequately provided to all parties-in-interest.

Likewise, the non-Debtor parties to the Assigned Contracts will be provided with adequate notice of, and opportunity to object to, the assumption and assignment of the Assigned Contracts.

## **NOTICE**

42. The Debtors have provided notice of this Motion to: (i) all entities known to have expressed an interest in a transaction with respect to some or all of the Debtors' assets during the past six (6) months; (ii) all entities known to have asserted any Interest in or upon any of the Acquired Assets; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (iv) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; (v) the U.S. Trustee; (vi) the Committee; (vii) the Debtors' pre- and post-petition lenders; (viii) the Securities & Exchange Commission; (ix) the Office of the United States Attorney General for the District of Delaware; (x) the Internal Revenue Service; (xii) the U.S. Department of Justice; (xi) the offices of the attorneys general for the states in which the Debtors operate; and (xii) all parties entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of the Bidding Procedures Order and the Sale Order granting the relief requested herein and such other and further relief as is just.

Dated: March 26, 2019
       Wilmington, Delaware

*/s/ Elizabeth S. Justison*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Elizabeth S. Justison (No. 5911)
Allison S. Mielke (No. 5934)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Proposed Counsel to the Debtors and Debtors in Possession*