**<u>EXHIBIT A</u>**

**Proposed Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F+W MEDIA, INC., *et al.*,[1] | Case No. 19-10479 (KG) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ___ |

**ORDER (I) APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS RELATED TO THE COMMUNITIES LINE; AND (B) FORM AND MANNER OF NOTICES RELATED THERETO; AND (II) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE, INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of (i) an order (this "Bidding Procedures Order"):  (a) approving the proposed bidding procedures attached as **Exhibit 1** to this Bidding Procedures Order (the "Bidding Procedures"), to govern the sale (the "Sale") of substantially all of the assets related to the Debtors' going-concern business of Communities (the "Acquired Assets"); (b) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (c) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto; (d) scheduling a final hearing (the "Sale Hearing") to approve the Sale; and (e) granting related

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  New Publishing Holdings, Inc. (4101); F+W Media, Inc. (5953); F+W Subscription Services, LLC (3663); F+W Trade Show & Events, LLC (0268); F+W OH e-Commerce, LLC (3762); Former Quilting Inc. (7854); The Writers Store, Inc. (6951); F & W Media International Limited (UK Registered No. 04003207); and F+W NH e-Commerce, LLC (9731).  The headquarters for the above-captioned Debtors is 1140 Broadway, 14th Floor, New York, New York 10001.

[2]  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

relief, and (ii) at the Sale Hearing, an order (a "Sale Order"), a proposed form of which will be filed on the date that is two (2) business days prior to the Sale Hearing, (x) authorizing the sale of the Acquired Assets free and clear of liens, claims, interests, and encumbrances (collectively, the "Interests") with any such Interests to attach to the proceeds thereof with the same validity, extent, and priority (under the Bankruptcy Code) as such Interests had immediately prior to the consummation of the Sale; (y) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (z) granting related relief, all as more fully described in the Motion; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS THAT**:

    A.    The findings of fact and conclusions of law herein constitute this Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law,

they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014, and Local Rule 6004-1.  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and other parties-in-interest.

D.      Notice of the Motion, the Bidding Procedures hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Notice of the Motion has been given to: (i) all entities known to have expressed an interest in a transaction with respect to some or all of the Debtors' assets during the past six (6) months; (ii) all entities known to have asserted any Interest in or upon any of the Acquired Assets; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (iv) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; (v) the Office of the United States Trustee for the District of Delaware; (vi) the Committee; (vii) the Debtors' pre- and post-petition lenders; (viii) the Securities & Exchange Commission; (ix) the Office of the United States Attorney General for the District of Delaware; (x) the Internal Revenue Service; (xii) the U.S.

Department of Justice; (xi) the offices of the attorneys general for the states in which the Debtors operate; and (xii) all parties entitled to notice pursuant to Local Rule 2002-1(b) (collectively, the "Notice Parties").  Accordingly, no further notice of the Motion or this Bidding Procedures Order is necessary or required.

E.      The Debtors have demonstrated a compelling and sound business justification for this Court to grant the relief as set forth herein, including, without limitation:  (i) approval of the Bidding Procedures; (ii) approval of the Assumption and Assignment Procedures; (iii) approval of the form and manner of notice of all procedures, protections, schedules, and agreements described in the Motion and attached thereto; (iv) the scheduling of a date for the Sale Hearing; and (v) all related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the hearing for such Motion, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.      The Bidding Procedures, in the form attached hereto as **Exhibit 1** and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates.

G.      The Motion and the Assumption and Assignment Notice are reasonably calculated to provide counterparties to the Assigned Contracts with proper notice of the intended assumption and assignment of their executory contracts or unexpired leases, any cure amounts relating thereto, and the Assumption and Assignment Procedures.

H.      The sale notice (the "Sale Notice") attached hereto as **Exhibit 2** is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of

the Acquired Assets, including, without limitation:  (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets to be sold; (v) instructions for promptly obtaining copies of the Asset Purchase Agreement; (vi) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Sale Order and Asset Purchase Agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; and (vii) notice of the proposed assumption and assignment of Assigned Contracts to the Successful Bidder, and no other or further notice of the Sale shall be required.

I.      The Debtors' marketing process has been reasonably calculated to maximize value for the benefit of all stakeholders.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.[3]

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to this Court at the hearing on the Motion or by stipulation filed with this Court, are overruled.

3.      The record establishes that the Debtors' prior actions in connection with the marketing process, as it relates to the Acquired Assets, were appropriate and reasonably calculated to lead to the highest and best offer for the Sale.

---

[3]    Notwithstanding anything to the contrary herein, the consummation of the Sale is subject to entry of the Sale Order.

## I.      Timeline for the Sale

4.      The Debtors are authorized to proceed with the Sale in accordance with the Bidding Procedures, which are attached to this Order as **Exhibit 1**, and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline, and as more fully described herein:

| <u>Action</u> | <u>Deadline</u> |
|---|---|
| Deadline for the Debtors to serve the Sale Notice | 3 business days after entry of the Bidding Procedures Order |
| Sale Objection Deadline | 4:00 p.m. (prevailing Eastern Time) on May 28, 2019 |
| Assumption and Assignment Objection Deadline (Deadline to object to proposed assumption of the applicable Assigned Contract and proposed Cure Costs) | Fourteen days from the Assumption and Assignment Service Date |
| Bid Deadline | 5:00 p.m. (prevailing Eastern Time) on May 28, 2019 |
| Auction | 10:00 a.m. (prevailing Eastern Time) on May 30, 2019, if needed, at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (or such other place and time as the Debtors timely communicate to all entities entitled to attend the Auction) |
| Deadline to Object to conduct of the Auction and Sale to a Successful Bidder (the "<u>Auction Objection Deadline</u>") | 10:00 a.m. (prevailing Eastern Time) on June 3, 2019 |
| Sale Hearing | 1:00 p.m. (prevailing Eastern Time) on June 4, 2019 |

5.      For the avoidance of doubt, the Debtors reserve the right, and are authorized, to modify the above timeline and the Bidding Procedures, in consultation with the Committee and the DIP Lenders, which consent shall not be unreasonably withheld, in accordance with the provisions of the Bidding Procedures, provided that a notice of any such modification will be

filed     with     this     Court     and     posted     on     the     following     website, https://dm.epiq11.com/#/case/FWM/info (the "Case Website").

## II.    The Bidding Procedures

6.    The Bidding Procedures are approved in their entirety.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

7.    The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest.  As further described in the Bidding Procedures, the Bid Deadline shall be 5:00 p.m. (prevailing Eastern Time) on May 28, 2019. Any disputes or objections to the selection of Qualified Bids, Successful Bids, or Backup Bids (all as defined in the Bidding Procedures) shall be resolved by this Court at the Sale Hearing as set forth herein.

8.    The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.  The Auction, to the extent that an Auction is necessary under the Bidding Procedures, shall take place at 10:00 a.m. (prevailing Eastern Time) on May 30, 2019 at the offices of the proposed counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (or such other place and time as the Debtors timely communicate no later than 14 hours prior to the Auction, or as soon as reasonably practicable, to all entities entitled to attend the Auction).  Any objections to the conduct of the Auction must be filed by the Auction Deadline and served on the Objection Recipients (as defined below).

9.      Any creditor with a valid and perfected lien on any of the Acquired Assets (each, a "Secured Creditor") shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of such Secured Creditor's allowed secured claims to the extent that such secured claims are valid and undisputed pursuant to section 363(k) of the Bankruptcy Code or other applicable law, and any such credit bid shall be deemed a Qualified Bid, and any such Secured Creditor a Qualified Bidder, for all purposes hereof.  If a Secured Creditor, in accordance with section 363(k) of the Bankruptcy Code, purchases assets and subsequently this Court disallows all or any portion of the secured claims that comprises part of any such credit bid, the corresponding Successful Bid for the disallowed portion of such credit bid must instead be paid in cash.

10.      Following entry of this Order, the Debtors shall be authorized, but not obligated, in consultation with the Committee and the DIP Lenders, to select one or more potential bidders to act as a stalking horse bidder (a "Stalking Horse Bidder") for all or any portion of the Assets (which Stalking Horse Bidder may be the Lenders pursuant to a credit bid or otherwise), and may agree to provide such Stalking Horse Bidder(s) certain bid protections, including an expense reimbursement and/or a break-up fee (the "Bid Protections"); provided that any such Bid Protections shall be subject to approval by the Court, which the Debtors may seek on an expedited basis pursuant to section 105(a) of the Bankruptcy Code and Local Rule 9006-1(e).

**III.    Notice Procedures**

11.      The Sale Notice attached hereto as **Exhibit 2** is hereby approved.

12.      On or before three (3) business days after entry of this Bidding Procedures Order, the Debtors will cause the Sale Notice to be sent by first-class mail postage prepaid to the Notice Parties and all known creditors of the Debtors.

01:24296239.3

13.     In addition to the foregoing, as soon as practicable, but in any event no later than seven (7) business days after the entry of this Bidding Procedures Order, the Debtors shall publish the Sale Notice (modified for publication, as necessary) once in the national edition of *The New York Times, USA Today*, or the *Wall Street Journal*.

14.     Service of the Sale Notice as described herein shall be sufficient and proper notice of the Sale with respect to known interested parties.  Publication of the Sale Notice as described herein shall be sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

15.     No later than noon the next business day after the conclusion of the Auction, the Debtors shall file on the docket and post on the Case Website, but not serve, a notice identifying the Successful Bidder.

**IV.     Assumption and Assignment Procedures**

16.     The Assumption and Assignment Procedures, which are set forth below, regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder pursuant to section 365(f) of the Bankruptcy Code are hereby approved to the extent set forth herein.

   *A.     Notice of Assumption and Assignment.*

17.     As soon as practicable following entry of this Bidding Procedures Order, (any such date, the "Assumption and Assignment Service Date") the Debtors shall file with this Court, and post on the Case Website, the Notice of Assumption and Assignment and, included therewith, a list (the "Assigned Contracts List") that specifies:  (i) each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale (the "Assigned Contracts"), including the name of each non-Debtor counterparty to such

01:24296239.3

9

Assigned Contract (the "<u>Assigned Contract Counterparty</u>"); and (ii) the proposed amount necessary, if any, to cure all monetary defaults, if any, under the proposed Assigned Contract (the "<u>Cure Costs</u>").  The Debtors shall serve, by first class mail, the Notice of Assumption and Assignment, in substantially the form attached hereto as **<u>Exhibit 3</u>**, and the Assigned Contracts List on each Assigned Contract Counterparty.  The Debtors shall serve on all parties that have requested notice pursuant to Bankruptcy Rule 2002, by first class mail, the Notice of Assumption and Assignment without the Assigned Contracts List.  Service as set forth herein shall be deemed proper, due, timely, good, and sufficient notice and no other or further notice is necessary.

18.     An Assigned Contract Counterparty listed on the Notice of Assumption and Assignment may file an objection (an "<u>Assigned Contract Objection</u>") to the proposed assumption and assignment of the applicable Assigned Contract or the proposed Cure Costs.  All Assigned Contract Objections must (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any, (ii) include appropriate documentation in support thereof, and (iii) be filed and served on the Objection Recipients no later than 4:00 p.m. (prevailing Eastern Time) fourteen (14) days following the Assumption and Assignment Service Date (the "<u>Assumption and Assignment Objection Deadline</u>").

19.     If an Assigned Contract Counterparty files an Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Sale Hearing, such later hearing date that the Debtors determine in their discretion, or such other date determined by this Court.

     *B.     Supplemental Notice of Assumption and Assignment.*

20.     Following the conclusion of the Auction, if any, and the selection of the Successful Bidder, the Debtors reserve the right at any time after the Assumption and

Assignment Service Date, before or after the closing of the Sale, to: (i) supplement the list of Assigned Contracts on the Notice of Assumption and Assignment with previously omitted Assigned Contracts; (ii) remove an Assigned Contract from the list of executory contracts and unexpired leases ultimately selected as an Assigned Contract that the Successful Bidder proposes be assumed and assigned to it in connection with the Sale or add to such list; and (iii) modify the previously stated Cure Cost associated with any Assigned Contract.

21.     In the event that the Debtors exercise any of the rights reserved in paragraph 20 above, the Debtors will promptly serve a supplemental notice of assumption and assignment by electronic transmission, hand delivery, or overnight mail on the Assigned Contract Counterparty, and its attorney, if known, to each impacted Assigned Contract at the last known address available to the Debtors (a "Supplemental Notice of Assumption and Assignment"). Each Supplemental Notice of Assumption and Assignment will include the same information with respect to listed proposed Assigned Contracts as was included in the Notice of Assumption and Assignment.

22.     Any Assigned Counterparty listed on a Supplemental Notice of Assumption and Assignment may file an objection (a "Supplemental Assigned Contract Objection") to the proposed assumption and assignment of the applicable Assigned Contract, the proposed Cure Costs, or the Successful Bidder's proposed form of adequate assurance of performance, if any. All Supplemental Assigned Contract Objections must: (i) state, with specificity, the legal and factual basis thereof as well as what Cure Costs the objecting party believes are required, if any; (ii) include appropriate documentation in support of the objection; and (iii) be filed and served on the Objection Recipients no later than fourteen (14) days from the date of service of such Supplemental Notice of Assumption and Assignment (the "Supplemental Assumption and

Assignment Deadline"), which date will be set forth in the Supplemental Notice of Assumption and Assignment.

23.     If an Assigned Contract Counterparty files a Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek an expedited hearing before this Court (a "Supplemental Assigned Contract Hearing") to determine the Cure Costs, if any, and approve the assumption of the relevant Assigned Contracts.  If there is no such objection, then the Debtors will obtain an order of this Court, including by filing a certification of no objection, (a "Supplemental Assigned Contract Order") fixing the Cure Costs and approving the assumption of any Assigned Contract listed on a Supplemental Notice of Assumption and Assignment.

C.     *Additional Notice of Assumption and Assignment Procedures.*

24.     If the Assigned Contract Counterparty does not file and serve a Assigned Contract Objection or Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of this Court in connection with such objection establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and (ii) the Assigned Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such Assigned Contract, other than additional amounts on account of a default occurring between the service of the Assigned Contract Objection and the assumption of the Assigned Contract, against the Debtors or the Successful Bidder, or the property of any of them.

25.     Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed and served on the Objection Recipients by the later of (i) the Auction Objection Deadline, which is 10:00 a.m. (prevailing Eastern Time) on June 3, 2019, and (ii) the Supplemental Assumption and Assignment Deadline, and will be resolved at the Sale Hearing or Supplemental Assigned Contract Hearing, as applicable, or, in the Debtors' discretion, adjourned to a later hearing.

26.     The inclusion of an Assigned Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not:  (i) obligate the Debtors to assume any Assigned Contract listed thereon or the Successful Bidder to take assignment of such Assigned Contract; or (ii) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract.  Only those Assigned Contracts that are included on a schedule of assumed and acquired contracts attached to the final asset purchase agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the Successful Bidder.

**V.      Sale Hearing.**

27.     A Sale Hearing to (i) approve the sale of the Acquired Assets to the Successful Bidder and (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held at 1:00 p.m. (prevailing Eastern Time) on June 4, 2019, and may be adjourned or rescheduled without notice other than the filing of a notice on this Court's docket, which notice shall be posted on the Case Website.  At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid and the Backup Bid.  The Sale Hearing shall be an evidentiary hearing on matters relating to the Sale and there will be no further bidding at the Sale Hearing.  In the event that the Successful Bidder cannot or refuses to consummate the

Sale, the Debtors may, in accordance with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors shall be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court.

28.     Any and all objections, if any, to the Sale to the Successful Bidder and entry of the Sale Order (a "Sale Objection") must be filed by 4:00 p.m. (prevailing Eastern Time) on May 28, 2019 (the "Sale Objection Deadline") and served on: (i) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Kenneth J. Enos, Esq. (kenos@ycst.com) and Elizabeth S. Justison, Esq. (ejustison@ycst.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Benjamin A. Hackman, Esq. (Benjamin.A.Hackman@usdoj.gov); (iii) the Debtors' investment banker, FTI Consulting, Inc., Three Times Square, 9th Floor, New York, New York 10036, Attn: Glenn Tobias (Glenn.Tobias@fticonsulting.com) and Shane Campbell (Shane.Campbell@fticonsulting.com); (iv) counsel to the Debtors' post-petition lenders, Halperin Battaglia Benzija, LLP, 40 Wall Street, 37th Floor, New York, New York 10005, Attn: Alan D. Halperin (ahalperin@halperinlaw.net); and (v) counsel to the Committee, Arent Fox LLP, 1301 Avenue of the Americas, Floor 42, New York, New York 10019, Attn: Jordana L. Renert (jordana.renert@arentfox.com) and Robert M. Hirsh (robert.hirsh@arentfox.com); Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attn: Eric J. Monzo (emonzo@morrisjames.com) and Brya M. Keilson (bkeilson@morrisjames.com) (collectively (i)–(v), the "Objection Recipients"). Any party failing to timely file a Sale Objection will be forever barred from objecting to the Sale and will be deemed to have consented to the Sale,

including the transfer of the Debtors' right, title and interest in, to, and under the Acquired Assets free and clear of any and all Interests in accordance with the definitive agreement for the Sale.

**VI.    Miscellaneous.**

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

30.     This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

31.     To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

32.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

33.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, any Asset Purchase Agreement, and the implementation of this Bidding Procedures Order.

# Exhibit 1

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| F+W MEDIA, INC., *et al.*,[1] | Case No. 19-10479 (KG) |
| Debtors. | (Jointly Administered) |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS**
**RELATED TO THE COMMUNITIES BUSINESS LINE**

On April [●], 2019, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [D.I. [●]] (the "Bidding Procedures Order"),[2] by which the Court approved, among other things, the following procedures (the "Bidding Procedures"). The Bidding Procedures set forth the process by which the Debtors are authorized to solicit bids and, if necessary, conduct an auction (the "Auction") for the sale (the "Sale") of substantially all of the Debtors' assets related to the Debtors' Communities business line (the "Assets").

1.      **Submissions to the Debtors**.

All submissions to the Debtors required to be made under the Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "Notice Parties"):

a.      **Debtors**. F+W Media, Inc., 1140 Broadway, 14th Floor, New York, New York 10001, Attn: Gregory J. Osberg (greg.osberg@fwmedia.com).

b.      **Debtors' Counsel**. Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Kenneth J. Enos (kenos@ycst.com) and Elizabeth S. Justison (ejustison@ycst.com).

c.      **Debtors' Investment Banker**. FTI Consulting, Inc. ("FTI"), Three Times Square, 9th Floor, New York, New York 10036, Attn: Glenn Tobias (Glenn.Tobias@fticonsulting.com) and Shane Campbell (Shane.Campbell@fticonsulting.com).

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: New Publishing Holdings, Inc. (4101); F+W Media, Inc. (5953); F+W Subscription Services, LLC (3663); F+W Trade Show & Events, LLC (0268); F+W OH e-Commerce, LLC (3762); Former Quilting Inc. (7854); The Writers Store, Inc. (6951); F & W Media International Limited (UK Registered No. 04003207); and F+W NH e-Commerce, LLC (9731). The headquarters for the above-captioned Debtors is 1140 Broadway, 14th Floor, New York, New York 10001.

[2]  All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

01:24283965.4

d.     **DIP Lenders' Counsel.**  Halperin Battaglia Benzija, LLP, 40 Wall Street, 37th Floor, New York, New York 10005, Attn: Alan D. Halperin (ahalperin@halperinlaw.net).

e.     **Committee's Counsel**.  Arent Fox LLP, 1301 Avenue of the Americas, Floor 42, New York, New York 10019, Attn: Jordana L. Renert (jordana.renert@arentfox.com) and Robert M. Hirsh (robert.hirsh@arentfox.com); Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attn: Eric J. Monzo (emonzo@morrisjames.com) and Brya M. Keilson (bkeilson@morrisjames.com).

**2.     Potential Bidders**.

The Debtors and their advisors have identified, and may in the future identify, parties they believe potentially may be interested in consummating (and potentially may have the financial resources necessary to consummate) a transaction.  To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (each, a "Potential Bidder") must deliver or have previously delivered, if determined to be necessary by the Debtors:

a.     an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement"), to the extent not already executed; and

b.     proof by the Potential Bidder of its financial capacity to close a transaction, including payment of any cure amount with respect to any contract that may be assigned, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and their advisors will determine in consultation with any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Committee") and the DIP Lenders (as defined in the *Interim Order (i) Authorizing the Debtors to Obtain Postpetition Secured Financing and Use Cash Collateral; (ii) Modifying the Automatic Stay; and (iii) Scheduling a Final Hearing* [D.I. 42]).

**3.     Qualified Bidders**.

a.     A "Qualified Bidder" is a Potential Bidder:  (i) who has satisfied the requirements of Sections 2 (a) and (b) above; and (ii) whose Bid (as defined below) is a Qualified Bid (as defined below).  Promptly after the Bid Deadline, the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder.  Both the lenders under the Pre-Petition Credit Agreement[3] (the "Pre-Petition Lenders") and the DIP Lenders (together with the Pre-Petition Lenders, the "Lenders") shall each be deemed a Qualified Bidder.

---

[3] The Pre-Petition Credit Agreement means that certain Amended and Restated Credit Agreement, dated as of May 24, 2017, among New Publishing Holdings, Inc., F+W Media, Inc., as the Borrower, the several banks and other financial institutes or entities from time to time parties thereto, as lenders.

b.    For the avoidance of doubt, Potential Bidders may submit a Bid for any or all of the Assets, provided that such Bid(s), when taken as a whole along with other Bids, is determined by the Debtors, in consultation with the Committee and the DIP Lenders in accordance with Section 3(a) of these Bidding Procedures, to constitute a Qualified Bid, *provided* that in determining the value of the Bid, the Debtors will not be limited to evaluating the dollar amount of the Bid, but may also consider factors affecting the speed, certainty, and value of the proposed transaction.

c.    If any Potential Bidder is determined by the Debtors, in consultation with Committee and the DIP Lenders, not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit (as defined below) on or within three (3) business days such determination is made.

d.    The Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors (in consultation with the Committee and the DIP Lenders), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid during the period that such Qualified Bid remains binding as specified in these Bidding Procedures, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

e.    Any disputes related to these Bidding Procedures, including whether a Bid constitutes a Qualified Bid, shall be resolved by the Court.

**4.    Due Diligence**.

a.    **Diligence Provided to Potential Bidders**.

Only Potential Bidders that have entered into a Confidentiality Agreement shall be eligible to receive due diligence information. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement**. The Debtors will provide to each Potential Bidder that has entered into a Confidentiality Agreement due diligence information as the Debtors determine to be reasonable under the circumstances. For all Potential Bidders, the due diligence period will end on the Bid Deadline, and, subsequent to the Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Assets, the Debtors' liabilities, or any Sale ("Confidential Sale Information") to any person, *except* to a Potential Bidder that has entered into a Confidentiality Agreement or to such Potential Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment, in consultation with the Committee and the DIP Lenders, have not established, or who have raised doubt, that such Potential Bidder intends

in good faith to, or has the capacity to, consummate the applicable Sale or are not reasonably likely to become a Qualified Bidder (as defined below).

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder that the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors.  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not approved by the Debtors as a Potential Bidder.

**All due diligence requests must be directed to FTI.**

b.      **Diligence Provided by Potential Bidders**.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate a Sale.  Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such Potential Bidder is not a Qualified Bidder or that a Bid made by such Potential Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures.  Each recipient of confidential information agrees to use, and to instruct its advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process and these chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and the Debtors' advisors may disclose confidential information:  (i) with the prior written consent of the applicable Potential Bidder and the Debtors; (ii) to the professional advisors of the Committee and the DIP Lenders as necessary hereunder, and (iii) as otherwise required by law, by court or other governmental order, or by governmental regulation, including, as appropriate, to regulatory agencies.

**5.      Form Asset Purchase Agreement**

The Debtors are in the process of preparing a form of asset purchase agreement (the "Form APA") for the sale of the Assets.  A copy of the Form APA will be filed with the Court and provided to prospective purchasers.

**6.      Stalking Horse Bidder**

Following entry of the Bidding Procedures Order, the Debtors shall be authorized, but not obligated, in consultation with the Committee and the DIP Lenders, to select one or more potential bidders to act as a stalking horse bidder (a "Stalking Horse Bidder") for all or any portion of the Assets (which Stalking Horse Bidder may be the Lenders pursuant to a credit bid or otherwise), and may agree to provide such Stalking Horse Bidder(s) certain bid protections, including an expense reimbursement and/or a break-up fee (the "Bid Protections"); *provided* that any such Bid Protections shall be subject to approval by the Court, which the Debtors may seek

on an expedited basis pursuant to section 105(a) of the Bankruptcy Code and Local Rule 9006-1(e).

**7.     Bid Requirements**.

A proposal, solicitation, or offer (each, a "<u>Bid</u>") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (collectively, the "<u>Bid Requirements</u>"), as determined by the Debtors in their reasonable business judgment, in consultation with the Committee and the DIP Lenders, shall constitute a "<u>Qualified Bid</u>."

a.     **Assets**. Each Bid must clearly state which Assets the Qualified Bidder is agreeing to purchase, and which liabilities of the Debtors the Qualified Bidder is agreeing to assume ("<u>Assumed Liabilities</u>").

b.     **Purchase Price**. Each Bid must clearly set forth the purchase price to be paid, including and identifying separately any cash and non-cash components (the "<u>Purchase Price</u>").

c.     **Deposit**. With its Bid, each Potential Bidder must submit by wire transfer of immediately available funds, a cash deposit in the amount equal to 7.5% of the aggregate cash and non-cash Purchase Price set forth in the Bid,[4] to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "<u>Deposit</u>").

d.     **Qualified APA**. Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Sale and shall include a schedule of assumed contracts to the extent applicable to the Bid, and a copy of the asset purchase agreement (together with a copy of the signed agreement that is marked to show changes from the Form APA), including those related to the respective Purchase Price and Assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such Bid (the "<u>Qualified Bid Documents</u>").

e.     **Contingencies; No Financing or Diligence Outs**. A Bid shall not be conditioned on: (i) obtaining financing; (ii) shareholder, board of directors, or other internal approval; or (iii) the outcome or completion of a due diligence review by the Potential Bidder. Notwithstanding the foregoing, a Bid may be subject to (i) the accuracy at the closing of the Sale of specified representations and warranties and (ii) the satisfaction at the closing of the Sale of specified conditions.

f.     **Identity**. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the Sale), and the complete terms of any such participation. Under no circumstances shall any

---

[4]  In determining the amount of the Deposit, the implied value of any securities to be provided as consideration under the Bid must be included, but the value of the Assumed Liabilities may be excluded.

undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid.

g.    **Demonstrated Financial Capacity**.    A Qualified Bidder must have, in the Debtors' business judgment, in consultation with the Committee and the DIP Lenders, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

h.    **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the satisfaction of the Debtors, in consultation with the Committee and the DIP Lenders, which demonstrates that the Potential Bidder has received sufficient debt or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid.

i.    **Binding and Irrevocable**.  A Qualified Bid must be irrevocable unless and until the Debtors accept a higher or otherwise better Bid and such Qualified Bidder is not selected as a Backup Bidder (as defined herein).

j.    **Expenses; Disclaimer of Fees**.  Each Bid must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.   For the avoidance of doubt, no Potential Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

k.    **Authorization**.  Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

l.    **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to submitting the Bid; (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Qualified Bid Documents.

m.    **Adherence to Bid Procedures**.  By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

n.    **Consent to Jurisdiction**.  Each Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the development and enforcement of these Bidding Procedures, the Sale documents, and the closing of the Sale, as applicable.

o.    **Bid Deadline**.  Each Bid must be transmitted by email (in pdf or similar format) so as to be **actually received** on or before 5:00 p.m. (prevailing Eastern Time) on May 28, 2019 (the "Bid Deadline") by the Notice Parties.

The Debtors, in consultation with the Committee and the DIP Lenders, reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors, in consultation with the Committee and the DIP Lenders, may accept a single Qualified Bid or multiple Bids for the Debtors' Assets that if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid.  The Debtors, in consultation with the Committee and the DIP Lenders, may also permit a Potential Bidder that satisfied the requirements of Section 3.a.i hereof and that submitted a Bid by the Bid Deadline for a material portion of the Assets but such Bid was not identified as a component of a single Qualified Bid consisting of multiple Bids, to participate in the Auction and to submit a higher or otherwise better Bid that in subsequent rounds of bidding may be considered, together with other Bids for the Debtors' assets, as part of a single Qualified Bid.

**8.    Right to Credit Bid**.

At the Auction, subject to section 363(k) of the Bankruptcy Code, any Qualified Bidder who has a valid and perfected lien on any of the Assets (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code, unless otherwise ordered by the Court for cause.

**9.    Auction**.

If the Debtors receive more than one (1) Qualified Bid, the Debtors will conduct an Auction to determine the Successful Bidder.  If the Debtors do not receive more than one (1) Qualified Bid, the Debtors will not conduct an Auction and shall designate the single Qualified Bidder as the Successful Bidder.

Prior to the Auction, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' reasonable business judgment, in consultation with the Committee and the DIP Lenders (the "Baseline Bid").  The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors reasonably deem, in consultation with the Committee and the DIP Lenders, relevant to the value of the Qualified Bid to the Debtors' estates, which may include, among other things: (i) the amount and nature of the total consideration; (ii) the likelihood of the Qualified Bidder's ability to close the applicable Sale and

the timing thereof; (iii) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (iv) the tax consequences of such Qualified Bid (collectively, the "<u>Bid Assessment Criteria</u>").

The Auction, if necessary, shall take place at 10:00 a.m. (prevailing Eastern Time) on May [30], 2019, at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801, or such later date and time as selected by the Debtors provided notice of any change will be filed twenty-four hours prior to the Auction, or as soon as reasonably practicable.  The Auction shall be conducted in a timely fashion according to the following procedures:

a.    **The Debtors Shall Conduct the Auction**.

The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid.  All incremental Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Creditors of the Debtors and representatives of the Office of the United States Trustee for the District of Delaware, the Committee, and the DIP Lenders may attend the Auction if they send written notice by email to the Debtors' counsel (kenos@ycst.com and ejustison@ycst.com) of their intention to attend the Auction on or before the Bid Deadline and in such notice identify the representatives who will attend on behalf of the creditor; *provided*, *however*, that the Debtors may limit the number of attendees per creditor to a reasonable number.  The Qualified Bidders may appear at the Auction in person or through duly authorized representatives.

b.    **Terms of Overbids**.

"<u>Overbid</u>" means any Bid made at the Auction by a Qualified Bidder[5] subsequent to the Debtors' announcement of the Baseline Bid.  Each Overbid must comply with the following conditions:

(i)    **<u>Minimum Overbid Increment</u>**.  The Debtors reserve the right, in consultation with the Committee and the DIP Lenders, to establish a minimum overbid increment (a "<u>Minimum Overbid Increment</u>") at or prior to the Auction based on the submitted Qualified Bids.  Upon the solicitation of each subsequent round of Overbids, the Debtors may, in their business judgment, in consultation with the Committee and the DIP Lenders, modify the amount or structure of the applicable Minimum Overbid Increment.

Additional consideration in an Overbid may include: (1) cash and noncash consideration; *provided, however,* that the value for such noncash consideration shall be determined by the Debtors in their reasonable

---

[5]  Or Qualified Bidders, in the event of a joint bid as allowed by the Debtors.

business judgment; and (2) in the case of a Bid by a Secured Creditor, a credit bid of up to the full amount of such Secured Creditor's allowed secured claim, subject to section 363(k) of the Bankruptcy Code.

(ii)    **Conclusion of Each Overbid Round**.  Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

(iii)    **Overbid Alterations**.  An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, in consultation with the Committee and the DIP Lenders, but shall otherwise comply with the terms of these Bidding Procedures.

(iv)    **Announcing Highest Bid**.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Committee and the DIP Lenders, have identified an Overbid as being higher or otherwise better than the Baseline Bid or the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid, as applicable, for a given asset package (for each asset package, the "Prevailing Highest Bid").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid.

c.    **Consideration of Overbids**.

The Debtors reserve the right, in their reasonable business judgment, and in consultation with the Committee and the DIP Lenders, to adjourn the Auction one or more times to, among other things:  (i) facilitate discussions among the Debtors, the Committee, the DIP Lenders, and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

d.    **Closing the Auction**.

(i)    The Auction shall continue until there is only one Bid or collection of Bids, as applicable, that the Debtors determine, in their reasonable business judgment and in consultation with the Committee and the DIP Lenders, to be the highest or otherwise best Bid.  Upon the approval of the Lenders that such Bid or Bids, as applicable, is adequate, such Bid or Bids shall be declared the "Successful Bid," and such Qualified Bidder (or Qualified Bidders) the "Successful Bidder," at which point the Auction will be closed; *provided, however*, that in the event the Lenders submit a

credit bid in accordance with paragraph 8 hereof, the Lenders shall not have consent rights regarding the selection of the Successful Bid(s). The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

(ii)     For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law.

(iii)    The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid; *provided*, *however*, that the Debtors, in consultation with the Committee and the DIP Lenders and subject to approval by the Court, may determine to accept such Bid if such Bid may otherwise be deemed the Successful Bid.

(iv)     No later than noon on the next business day after the conclusion of the Auction, the Debtors shall cause the Qualified Bid Documents for the Successful Bid and Backup Bid to be filed with the Court.

(v)      Following the closing of the Auction, the Debtors shall not initiate contact with, solicit, or encourage proposals from any person or entity with respect to the Assets.

e.    **No Collusion; Good-Faith Offer**.

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith offer and it intends to consummate the Sale if selected as the Successful Bidder.

**10.    Backup Bidder**.

a.    Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder or Qualified Bidders, in the case of a joint Bid or Bids for different sets of Assets, with the next-highest or otherwise second-best Bid at the Auction for such Assets, as determined by the Debtors in the exercise of their reasonable business judgment, in consultation with the Committee and the DIP Lenders (the "Backup Bid"), shall be required to serve as a backup bidder (each a "Backup Bidder"), and each Qualified Bidder shall agree and be deemed to agree to be a Backup Bidder if so designated by the Debtors for such Assets.

b.    The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. Each

Backup Bidder shall be required to keep its Bid (or if a Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable, until the closing of the Sale with the Successful Bidder. Each Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder and shall thereafter be returned within five (5) business days.

c.    If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may, in consultation with the Committee and the DIP Lenders, select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall, upon the approval of the Lenders that the Backup Bid is adequate, be deemed a Successful Bidder for all purposes; *provided, however*, that in the event the Lenders submit a credit bid in accordance with paragraph 8 hereof, the Lenders shall not have consent rights regarding the selection of the Successful Bid(s). The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

**11.    Reservation of Rights**.

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, in consultation with the Committee and the DIP Lenders, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (i) extending the deadlines set forth in these Bidding Procedures; (ii) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; and (v) rejecting any or all Bids.

**12.    Sale Hearing**.

A hearing to consider approval of the Sale to the Successful Bidder (the "Sale Hearing") is currently scheduled to take place on or before 1:00 p.m. (prevailing Eastern Time) on June 4, 2019 before the Honorable Kevin Gross, at the Court, 824 Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors**, **in consultation with the Committee and the DIP Lenders, by filing a notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Court for approval.

**13.    Return of Deposit**.

The Deposit of the Successful Bidder shall be applied to the Purchase Price of the transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more

interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or within five (5) business days after the Auction.

If any Successful Bidder fails to consummate a Sale because of a breach by the Successful Bidder, the Debtors will not have any obligation to return the Deposit paid by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the Sale with the Backup Bidder without the need for an additional hearing or order of the Court.

**14.    Fiduciary Out**.

Nothing in these Bidding Procedures shall require the Debtors' board of directors or members, as applicable, to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Debtors' board of directors or members, as applicable, determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

## Exhibit 2

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| F+W MEDIA, INC., *et al.*,[1] | Case No. 19-10479 (KG) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ___ |

**NOTICE OF PROPOSED SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**
**RELATED TO THE DEBTORS' COMMUNITIES BUSINESS LINE**

      **PLEASE TAKE NOTICE** that above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 10, 2019.  On March 26, 2019, the Debtors filed a motion [D.I. ___] (the "Sale Motion")[2] seeking authority, among other things, to sell (the "Sale") substantially all of the Debtors' assets related to the Debtors' Communities business (the "Acquired Assets") to the Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests, other than those permitted in the applicable purchase agreement.

      **PLEASE TAKE FURTHER NOTICE** that, on April __, 2019, the Bankruptcy Court entered an order [D.I. ___] (the "Bidding Procedures Order"), granting certain of the relief sought in the Motion, including, among other things, approving (i) the Bidding Procedures, which were attached as Exhibit 1 to the Bidding Procedures Order, and (ii) procedures for the assumption and assignment of contracts and leases in connection with the Sale (the "Assumption and Assignment Procedures").

      **PLEASE TAKE FURTHER NOTICE** that approval of the Sale of the Acquired Assets to the Successful Bidder may result in, among other things, the assumption, assignment, and/or transfer by the Debtors of certain executory contracts and unexpired leases.  If you are counterparty to an executory contract or unexpired lease with the Debtors, you will receive a separate notice regarding the Assumption and Assignment Procedures that contains additional relevant dates and other information that may impact you as counterparty to such executory contract or unexpired lease.

      **PLEASE TAKE FURTHER NOTICE** that, all interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.  The deadline by which all Bids must be *actually received* is **5:00 p.m. (EDT) on May 28, 2019** (the "Bid Deadline").

**Contact Persons for Parties Interested in Submitting a Bid**

      The Bidding Procedures set forth in detail the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Acquired Assets **must** comply with the Bidding Procedures. **Only Qualified Bids will be considered by the Debtors**.  Any persons interested in making an offer to purchase the Acquired Assets should contact the Debtors' investment banker:  FTI Consulting, Inc. ("FTI"), Three Times

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  New Publishing Holdings, Inc. (4101); F+W Media, Inc. (5953); F+W Subscription Services, LLC (3663); F+W Trade Show & Events, LLC (0268); F+W OH e-Commerce, LLC (3762); Former Quilting Inc. (7854); The Writers Store, Inc. (6951); F & W Media International Limited (UK Registered No. 04003207); and F+W NH e-Commerce, LLC (9731).  The headquarters for the above-captioned Debtors is 1140 Broadway, 14th Floor, New York, New York 10001.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Sale Motion.

Square, 9th Floor, New York, New York 10036, Attn: Glenn Tobias (Glenn.Tobias@fticonsulting.com) and Shane Campbell (Shane.Campbell@fticonsulting.com).

## Obtaining Additional Information

Copies of the Sale Motion and the Bidding Procedures Order, as well as all related exhibits, including the Form APA and the Bidding Procedures, notice of Successful Bidder (when filed),[3] and all other related documents filed with the Bankruptcy Court (collectively, the "Sale Documents") are available free of charge on the website of the Bankruptcy Court-appointed claims and noticing agent for the Chapter 11 Cases, Epiq Corporate Restructuring, LLC ("Epiq"), https://dm.epiq11.com/#/case/FWM/info.  The Sale Documents also are available, free of charge, upon request to Epiq (tel: 888-437-2292 (United States); +1-503-597-535 (outside the United States); FWMedia@epiqglobal.com) or to the Debtors (Beth A. Olivere, paralegal, tel: 302-571-6557; fax: 302-576-3394; bolivere@ycst.com).

## Important Dates and Deadlines

The dates and deadlines set forth below have been established pursuant to the Bidding Procedures Order.

1.  The deadline to file an objection with the Bankruptcy Court to the entry of an order approving the sale (the "Sale Order") (collectively, "Sale Objections") is **4:00 p.m. (EDT) on May 28, 2019** (the "Sale Objection Deadline").

2.  The deadline to submit a Qualified Bid is **5:00 p.m. (EDT) on May 28, 2019**.

3.  In the event that the Debtors timely receive more than one (1) Qualified Bid, the Debtors intend to conduct an Auction for the Acquired Assets.  The Auction, if any, will be held at **10:00 a.m. (EDT) on May 30, 2019** at the offices of counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (or such other place and time as the Debtors timely communicate to all entities entitled to attend the Auction).  Creditors of the Debtors and representatives of the Office of the United States Trustee for the District of Delaware may attend the Auction if they send written notice by email to the Debtors' proposed counsel (kenos@ycst.com and ejustison@ycst.com) of their intention to attend the Auction on or before the Bid Deadline and in such notice identify the representatives who will attend on behalf of the creditor; *provided*, *however*, that the Debtors may limit the number of attendees per creditor to a reasonable number.

4.  The deadline for objections to the conduct of the Auction and the terms of a Sale to a Successful Bidder (collectively, "Auction Objections") **is 10:00 a.m. (EDT) on June 3, 2019** (the "Auction Objection Deadline").

5.  A hearing (the "Sale Hearing") to consider the Sale presently is scheduled to be held on **June 4, 2019 at 1:00 p.m. (EDT)**, before the Honorable Kevin Gross, at the Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket of the Chapter 11 Cases.

## Filing Objections

Sale and Auction Objections, if any, must:  (a) be in writing; (b) state with specificity the nature of such objection; (c) comply with the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the

---

[3] Within the earlier of (i) five business hours after conclusion of the Auction and (ii) noon the next business day after the conclusion of the Auction, the Debtors shall file on the docket and post on the Case Website under the "Sale Related Documents" tab a notice identifying the Successful Bidder.

01:24299629.1

United States Bankruptcy Court for the District of Delaware; and (d) be filed with the Bankruptcy Court and served upon, so as to be **actually received** on or prior to the Sale Objection Deadline or the Auction Objection Deadline, as applicable, by the following parties: (i) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Kenneth J. Enos, Esq. (kenos@ycst.com) and Elizabeth S. Justison, Esq. (ejustison@ycst.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Benjamin A. Hackman, Esq. (Benjamin.A.Hackman@usdoj.gov); (iii) the Debtors' investment banker, FTI Consulting, Inc., Three Times Square, 9th Floor, New York, New York 10036, Attn: Glenn Tobias (Glenn.Tobias@fticonsulting.com) and Shane Campbell (Shane.Campbell@fticonsulting.com); (iv) counsel to the DIP Lenders, Halperin Battaglia Benzija, LLP, 40 Wall Street, 37th Floor, New York, New York 10005, Attn: Alan D. Halperin (ahalperin@halperinlaw.net); and (v) proposed counsel to the Committee, Arent Fox LLP, 1301 Avenue of the Americas, Floor 42, New York, New York 10019, Attn: Jordana L. Renert (jordana.renert@arentfox.com) and Robert M. Hirsh (robert.hirsh@arentfox.com); Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attn: Eric J. Monzo (emonzo@morrisjames.com) and Brya M. Keilson (bkeilson@morrisjames.com).

### <u>CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION</u>:

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE A SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE, OR RAISE AN AUCTION OBJECTION ON OR BEFORE THE AUCTION OBJECTION DEADLINE, IN ACCORDANCE WITH THE ENTERED BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF THE DEBTOR ESTATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS EFFECTED THEREUNDER.**

Dated:  April ___, 2019
       Wilmington, Delaware        */s/*_____

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Elizabeth S. Justison (No. 5911)
Allison S. Mielke (No. 5934)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

## **Exhibit 3**

**Notice of Assumption and Assignment**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F+W MEDIA, INC., *et al.*,[1] | Case No. 19-10479 (KG) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ___ |

### NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE PROPOSED SALE OF DEBTORS' ASSETS RELATED TO THE COMMUNITIES BUSINESS LINE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 10, 2019. On March 26, 2019, the Debtors filed a motion [D.I. ___] (the "Sale Motion")[2] seeking authority, among other things, to sell (the "Sale") substantially all of the Debtors' assets related to the Debtors' Communities business (the "Acquired Assets") to the Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests, other than those permitted in the applicable purchase agreement.

On April __, 2019, the Bankruptcy Court entered an order [D.I. ___] (the "Bidding Procedures Order"), granting certain of the relief sought in the Motion, including, among other things, approving (i) the Bidding Procedures, which were attached as Exhibit 1 to the Bidding Procedures Order, and (ii) procedures for the assumption and assignment of contracts and leases in connection with the Sale (the "Assumption and Assignment Procedures").

Upon the closing of the Sale, the Debtors intend to assume and assign to the Successful Bidder(s) the Assigned Contracts. A schedule listing the Assigned Contracts (the "Assigned Contracts List") may be accessed free of charge on the website of the Court-appointed claims and noticing agent for the Debtors' chapter 11 cases, Epiq Corporate Restructuring, LLC, https://dm.epiq11.com/#/case/FWM/info (the "Case Website"). In addition, the cure payments, if any, necessary for the assumption and assignment of the Assigned Contracts (the "Cure Payments") are set forth on the Assigned Contracts List.

**YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS HAVE IDENTIFIED YOU AS A COUNTERPARTY TO A POTENTIAL ASSIGNED CONTRACT.**

Pursuant to the Assumption and Assignment Procedures, the Debtors reserve the right at any time before the closing of a Sale, to:  (i) supplement the list of Assigned Contracts with previously omitted executory contracts or unexpired leases; (ii) remove an executory contract or unexpired lease from the list of executory

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  New Publishing Holdings, Inc. (4101); F+W Media, Inc. (5953); F+W Subscription Services, LLC (3663); F+W Trade Show & Events, LLC (0268); F+W OH e-Commerce, LLC (3762); Former Quilting Inc. (7854); The Writers Store, Inc. (6951); F & W Media International Limited (UK Registered No. 04003207); and F+W NH e-Commerce, LLC (9731). The headquarters for the above-captioned Debtors is 1140 Broadway, 14th Floor, New York, New York 10001.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Sale Motion.

contracts and unexpired leases ultimately selected as Assigned Contracts that the Successful Bidder proposes be assumed and assigned to it in connection with a Sale or add to such list; and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contract. Any counterparty impacted by such a modification will receive notice thereof and an opportunity to object to the proposed assumption and assignment of the Assigned Contract, if applicable.

## OBTAINING ADDITIONAL INFORMATION

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents are available free of charge on the Case Website.

## IMPORTANT DATES AND DEADLINES

1.      The deadline to file an objection with the Bankruptcy Court to the entry of an order approving the Sale (the "Sale Order") is **4:00 p.m. (Eastern Time) on May 28, 2019** (the "Sale Objection Deadline").

2.      The Auction for the Acquired Assets, if one is necessary, will commence at **10:00 a.m. (Eastern Time) on May 30, 2019**, at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (or at any other time and location as the Debtors may designate on proper notice).

3.      A hearing (the "Sale Hearing") to consider the proposed Sale will be held before the Bankruptcy Court at **1:00 p.m. (Eastern Time) on June 4, 2019**, or such other date as determined by the Court, at 824 North Market Street, Wilmington, Delaware 19801.

## FILING ASSUMPTION AND ASSIGNMENT OBJECTIONS

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of an Assigned Contract (each "Assigned Contract Objection"), including any objection relating to the Cure Payment, must: (a) be in writing; (b) state with specificity the nature of such objection and alleged Cure Payment, including applicable and appropriate documentation in support of such alleged Cure Payment; (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed with the Bankruptcy Court and served on the following parties so as to be **actually received** no later than **4:00 p.m. (Eastern Time) on May [  ], 2019** (the "Assumption and Assignment Objection Deadline"): (i) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Kenneth J. Enos, Esq. (kenos@ycst.com) and Elizabeth S. Justison, Esq. (ejustison@ycst.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Benjamin A. Hackman, Esq. (Benjamin.A.Hackman@usdoj.gov); (iii) the Debtors' investment banker, FTI Consulting, Inc., Three Times Square, 9th Floor, New York, New York 10036, Attn: Glenn Tobias (Glenn.Tobias@fticonsulting.com) and Shane Campbell (Shane.Campbell@fticonsulting.com); (iv) counsel to the DIP Lenders, Halperin Battaglia Benzija, LLP, 40 Wall Street, 37th Floor, New York, New York 10005, Attn: Alan D. Halperin (ahalperin@halperinlaw.net); and (v) proposed counsel to the Committee, Arent Fox LLP, 1301 Avenue of the Americas, Floor 42, New York, New York 10019, Attn: Jordana L. Renert (jordana.renert@arentfox.com) and Robert M. Hirsh (robert.hirsh@arentfox.com); Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attn: Eric J. Monzo (emonzo@morrisjames.com) and Brya M. Keilson (bkeilson@morrisjames.com) (collectively, the "Notice Parties"). Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed and served on the Notice Parties so as to be **actually received** no later than **10:00 a.m. (Eastern Time) on May [__], 2019**.

2

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE OBJECTIONS

To the extent that any party does not timely object as set forth above, such party may be: (i) forever barred from objecting to the assumption and assignment of any of the Assigned Contracts identified on the Assigned Contracts List, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance as it relates to the Sale to the Successful Bidder(s); (ii) deemed to have consented to the applicable Cure Payment, if any, and to the assumption and assignment of the applicable Assigned Contract as part of the Sale to the Successful Bidder(s); (iii) bound to such corresponding Cure Payment, if any; (iv) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (v) deemed to have agreed that all defaults under the applicable Assigned Contract arising or continuing prior to the Assumption and Assignment Objection Deadline have been cured as a result or precondition of the assignment, such that the Successful Bidder or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the Assumption and Assignment Objection Deadline, and from and after the date of the assignment, the applicable Assigned Contract shall remain in full force and effect for the benefit of the Successful Bidder and such party in accordance with its terms; (vi) deemed to have waived any right to terminate the applicable Assigned Contract or designate an early termination date under the applicable Assigned Contract as a result of any default that occurred and/or was continuing prior to the assignment date; and (vii) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Assigned Contract.

Dated:    April ___, 2019
                    Wilmington, Delaware

/s/
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Elizabeth S. Justison (No. 5911)
Allison S. Mielke (No. 5934)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Proposed Counsel to the Debtors and*
*Debtors in Possession*