## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F+W MEDIA, INC., *et al.*,[1] | Case No. 19-10479 (KG) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 80** |

## ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING THE SALE OF CERTAIN COMMUNITIES WITH THE DEBTORS' COMMUNITIES BUSINESS LINE FREE AND CLEAR OF ALL ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) <u>GRANTING RELATED RELIEF</u>

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") pursuant to sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (this "**Sale Order**") (a) authorizing and approving that certain Asset Purchase Agreement (the "**APA**," a copy of which is attached hereto as <u>Exhibit 1</u>), dated as of June 10, 2019, between Debtors F+W Subscription Services, LLC, F+W Trade Show & Events, LLC, F+W OH e-Commerce, LLC, F+W NH e-Commerce, LLC, and F+W Media, Inc. (collectively, the "**Sellers**") and Cruz Bay Publishing , Inc. ("**Buyer**"), (b) approving the sale of the Acquired

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  New Publishing Holdings, Inc. (4101); F+W Media, Inc. (5953); F+W Subscription Services, LLC (3663); F+W Trade Show & Events, LLC (0268); F+W OH e-Commerce, LLC (3762); Former Quilting Inc. (7854); The Writers Store, Inc. (6951); F & W Media International Limited (UK Registered No. 04003207); and F+W NH e-Commerce, LLC (9731).  The headquarters for the above-captioned Debtors is 1140 Broadway, 14th Floor, New York, New York 10001.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the APA (as defined herein), or to the extent not defined therein, the Bidding Procedures Order (as defined herein).

Assets pursuant to the APA, (c) approving the assumption and assignment of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code, (d) authorizing the Debtors to consummate transactions related to the APA, and (e) granting other related relief; and this Court having entered on April 15, 2019 that certain *Order (I) Approving (A) Bidding Procedures for the Sale of the Debtors' Assets Related to the Debtors' Communities Business Line; and (B) Form and Manner of Notices Related Thereto; and (II) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases* [D.I. 157] (the "**Bidding Procedures Order**"); and the Debtors having determined that the highest and otherwise best offer for the Acquired Assets was made by Buyer pursuant to the APA; and this Court having conducted a hearing on June 17, 2019 (the "**Sale Hearing**"), at which time all parties in interest were offered an opportunity to be heard with respect to the sale of the Acquired Assets to Buyer pursuant to the APA (the "**Sale**"), to consider the approval of the Sale pursuant to the terms and conditions of the APA, and this Court having considered (i) the Motion and any objections thereto, (ii) the Sale, (iii) the arguments of counsel made, and evidence adduced, related thereto, and (iv) the full record in these chapter 11 cases, including the record related to the hearing to consider the Bidding Procedures Order and the Sale Hearing held before the Court; all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the APA and the Sale and other transactions contemplated by the APA; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; it is hereby **FOUND, CONCLUDED, AND DETERMINED THAT**:[3]

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      This Court has jurisdiction over the Motion and over the property of the Debtors, including the Acquired Assets to be sold, transferred, and conveyed pursuant to the APA, pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Motion in this District and Court is proper under 28 U.S.C. §§ 1408 and 1409.

D.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Sale Order, and directs entry of judgment as set forth herein.

E.      The Acquired Assets constitute property of Sellers' bankruptcy estates and title thereto is vested in Sellers' bankruptcy estates within the meaning of section 541(a) of the Bankruptcy Code.

F.      The statutory bases for the relief requested in the Motion and provided for herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

G.     On March 10, 2019 (the "**Petition Date**"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

H.     This Court previously entered the Bidding Procedures Order: (i) establishing bidding and auction procedures; (iii) scheduling the Auction (if necessary) and the Sale Hearing to consider the sale of the Acquired Assets, to the extent set forth in the Bidding Procedures Order; (iv) establishing procedures for noticing and determining cure amounts related to Sellers' executory contracts and unexpired leases; (v) approving the form and manner of notice of all procedures, protections, schedules, and agreements; and (vi) granting certain related relief.

I.     As evidenced by the affidavits of service and publication previously filed with the Court [D.I. 111, 174, 186, 196, 224, 225, 226, 268, 270, 271, 277, 286 & 301], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Auction, the Sale, and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to Buyer at Closing pursuant to this Sale Order and the APA (collectively, the "**Assigned Contracts**") has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, and 9014 and in compliance with the Bidding Procedures Order, to each party entitled to such notice, including, as applicable:  (i) all entities known to have expressed an interest in a transaction with respect to some or all of the Debtors' assets during the past six (6) months; (ii) all entities known to have asserted any interest in or upon any of the Acquired Assets; (iii) all federal, state, and local regulatory or taxing authorities or

recording offices which have a reasonably known interest in the relief requested by the Motion; (iv) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; (v) the Office of the United States Trustee for the District of Delaware; (vi) the Committee; (vii) the Debtors' pre- and post-petition lenders; (viii) the Securities & Exchange Commission; (ix) the Office of the United States Attorney General for the District of Delaware; (x) the Internal Revenue Service; (xii) the U.S. Department of Justice; (xi) the offices of the attorneys general for the states in which the Debtors operate; and (xii) all parties entitled to notice pursuant to Local Rule 2002-1(b).  With respect to entities whose identities are not reasonably ascertained by the Debtors, publication of the Sale Notice once in the national edition of *The New York Times* on April 22, 2019, as evidenced by the affidavit of service filed by the Debtors at D.I. 196 in these chapter 11 cases, was, and is deemed, sufficient, and reasonably calculated under the circumstances to reach such entities.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale, and the Sale Hearing is, or shall be, required.

J.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion and provided for herein.

K.      The Sale Notice provided all interested parties with timely and proper notice of the Sale, the Sale Hearing, and the Auction.

L.      The disclosures made by the Debtors in the Motion, the Sale Notice, and related documents filed with the Court concerning the APA, the Auction, the Sale and the Sale Hearing were good, complete, and adequate.

M.     The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, proposed and executed in good faith as a result of arms'-length negotiations, and were substantively and procedurally fair to all parties.

N.     The Debtors conducted the sale process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The sale process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets.

O.     The terms contained in the APA constitute the highest and best offer for the Acquired Assets and will provide a greater recovery for Sellers' estates for the Acquired Assets than would be provided by any other available alternative.  Sellers' determination that the APA constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of Sellers' business judgment.

P.     The APA and the Sale contemplated thereby represent a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these chapter 11 cases.  No other entity or group of entities has presented a higher or otherwise better offer to Sellers to purchase the Acquired Assets for greater economic value to Sellers' bankruptcy estates than Buyer.

Q.     Approval of the Motion and the APA and the consummation of the Sale contemplated thereby is in the best interests of the Debtors, their creditors and estates and other parties in interest in these chapter 11 cases.

R.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Assets because, among other reasons, (i) the APA constitutes the highest and best offer for the Acquired Assets,

(ii) the APA and the closing thereon will present the best opportunity to realize the value of the Acquired Assets, and (iii) any other transaction would not have yielded as favorable an economic result.

S.      Buyer is purchasing the Acquired Assets in good faith and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor, and, therefore, is entitled to the full protections of that provision, and otherwise has proceeded in good faith in all respects in connection with these chapter 11 cases in that:  (i) Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Assets; (ii) Buyer was a Qualified Bidder under the bidding procedures and complied with the provisions in the Bidding Procedures Order;  (iii) Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by Buyer and other agreements or arrangements entered into by Buyer in connection with the Sale have been disclosed; (v) Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the APA, including the Sale contemplated thereby, were at arms'-length and in good faith.

T.      The APA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  The Debtors and Buyer and Buyer's agents, representatives and affiliates have not engaged in any conduct that would cause or permit the APA or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

U.      The consideration provided by Buyer pursuant to the APA:  (i) is fair and adequate and constitutes reasonably equivalent value and fair consideration under the

Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia (including the Uniform Fraudulent Transfer Act); (ii) is fair consideration under the Uniform Fraudulent Transfer Act; (iii) is reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory, or possession thereof, and the District of Columbia; and (iv) will provide a greater recovery for the Debtors' creditors than would be provided by any other reasonably practicable available alternative.

V.    By consummating the Sale, Buyer is not a mere continuation of Sellers or any other Debtor or any Debtor's bankruptcy estate, and there is no continuity, no common identity, and no continuity of enterprise between Buyer and any Debtor.  Buyer is not holding itself out to the public as a continuation of any Debtor.  Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or de facto merger of Buyer or any of the Debtors.  Neither Buyer nor any of its agents, representatives or affiliates shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliates thereof) and/or any Debtor's estate except as expressly provided in this Sale Order or the APA.

W.    The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.  The Sale does not constitute a *sub rosa* plan.

X.    The Sellers, acting by and through their existing agents, representatives, and officers, have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and the Sellers require no further consents or approvals to consummate the Sale contemplated by the APA, except as otherwise set forth in the APA.

Y.      The transfer of each of the Acquired Assets to Buyer will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest Buyer with all right, title, and interest of Sellers to the Acquired Assets free and clear of all Interests or Claims (as defined below) accruing, arising or relating thereto any time prior to the Closing Date, unless otherwise specifically assumed in, or permitted by, the APA.

Z.      Sellers may sell the Acquired Assets free and clear of all Interests or Claims against Debtors, their bankruptcy estates, or any of the Acquired Assets (unless otherwise assumed in, or permitted by, the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests or Claims against Debtors, their bankruptcy estates, or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests or Claims who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Interests or Claims, if any, in each instance against Debtors, their bankruptcy estates, or any of the Acquired Assets, attach to the cash proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the Sale, subject to any claims and defenses that Sellers or any other Debtor may possess with respect thereto.

AA.     The DIP Lenders (as defined in the Motion), in their capacity as such, have consented to the sale of the Acquired Assets to Buyer pursuant to the APA free and clear of any Interests or Claims (as defined below) of the DIP Lenders against the Acquired Assets, provided that, unless otherwise ordered by this Court, all cash proceeds generated from the Sale

shall be paid to the DIP Lenders upon the closing of such Sale for permanent application against the obligations owing by the Debtors to the DIP Lenders in accordance with the terms and conditions of that certain *Final Order (I) Authorizing the Debtors to Obtain Postpetition Secured Financing and Use Cash Collateral; and (II) Modifying the Automatic Stay* [D.I. 172] (the "**Final DIP Order**") and the DIP Agreement (as defined in the Final DIP Order), until such time as all such obligations have been paid in full.

BB.    The Tranche B-1 Term Lenders (as defined in the Final DIP Order), in their capacity as such, have consented to the sale of the Acquired Assets to Buyer pursuant to the APA free and clear of any Interests or Claims of the Tranche B-1 Term Lenders against the Acquired Assets, provided that any Interest or Claims of the Tranche B-1 Term Lenders attach to the cash proceeds of the Sale in the same order of priority, with the same validity, force, and effect that the Tranche B-1 Term Lenders had prior to the Sale, as set forth in the Pre-Petition Credit Agreement (as defined in the Final DIP Order).

CC.    The Tranche B-2 Term Lenders (as defined in the Final DIP Order), in their capacity as such, have consented to the sale of the Acquired Assets to Buyer pursuant to the APA free and clear of any Interests or Claims of the Tranche B-2 Term Lenders against the Acquired Assets, provided that any Interest or Claims of the Tranche B-2 Term Lenders attach to the cash proceeds of the Sale in the same order of priority, with the same validity, force, and effect that the Tranche B-2 Term Lenders had prior to the Sale, as set forth in the Pre-Petition Credit Agreement (as defined in the Final DIP Order).

DD.    If the Sale were not free and clear of all Interests or Claims (except as otherwise specifically assumed in, or permitted by, the APA), or if Buyer would, or in the future could, be liable for any of the Interests or Claims (except as otherwise specifically assumed in, or

permitted by, the APA), Buyer would not have entered into the APA and would not consummate the Sale, thus adversely affecting the Debtors and their bankruptcy estates and creditors.

EE.     Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to Buyer pursuant to the terms of this Sale Order and the APA, in each case in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of Sellers, the other Debtors, their bankruptcy estates and creditors, and other parties in interest.  The Assigned Contracts being assigned to Buyer under the APA are an integral part of the APA and the Sale and, accordingly, such assumptions and assignments are reasonable and enhance the value of the Debtors' bankruptcy estates.  Any non-Debtor counterparty to any Assigned Contract that has not actually filed with this Court an objection to such assumption as of the date hereof is deemed to have consented to such assumption and assignment.

FF.     Debtors and Buyer have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Assigned Contracts to the extent provided under this Sale Order and the APA and have:  (i) cured or agreed to cure any default existing prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code; and (ii) provided or agreed to provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and Buyer has provided adequate assurance of future performance with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)

and 365(f)(2) of the Bankruptcy Code.  The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary.

GG.    The APA and Sale must be approved and the Closing must occur promptly to preserve the value of the Acquired Assets and the Debtors' bankruptcy estates.

HH.    Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the consideration provided by Buyer under the APA, the Sale constitutes a reasonable and sound exercise of Debtors' business judgment, is in the best interests of Sellers and the other Debtors, their bankruptcy estates, their creditors, and other parties in interest in these chapter 11 cases, and should be approved.

II.    The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The relief requested in the Motion is granted as set forth herein.

2.    Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.    Notice of the Motion, the Auction, the Sale Hearing, and the Sale was fair and equitable under the circumstances, and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

## Approval of the Sale of the Acquired Assets

4.       The APA, including all other ancillary documents described therein, and all of the terms and conditions thereof, and the Sale contemplated thereby, are hereby approved in all respects.

5.       Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives, and officers, are authorized and empowered, and, subject to the terms of the APA and this Sale Order, directed to take any and all actions necessary or appropriate to:  (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of this Sale Order and the APA; (b) transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of this Sale Order and the APA; (c) execute and deliver, perform under, consummate, and implement this Sale Order and the APA and all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order, the APA, and the Sale, including, without limitation, one or more Transition Services Agreements as described in the APA in such form as Sellers and Buyer may reasonably determine, and any other ancillary documents, in each case as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by this Sale Order, the APA, and any such other ancillary documents, and (d) to take any and all actions reasonably requested by Buyer relating to the foregoing which are consistent with the APA and this Sale Order.

6.       This Sale Order shall be binding in all respects upon the Debtors, their bankruptcy estates, all creditors, all holders of equity interests in the Debtors, all holders of any Interests or Claims (as defined herein) (whether known or unknown) against any Debtor, all holders of Interests or Claims against or on all or any portion of the Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, Buyer and all agents,

representatives, affiliates, and permitted successors and assigns of Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.  The terms and provisions of the APA and this Sale Order shall inure to the benefit of the Debtors, their bankruptcy estates, and their creditors, Buyer and all agents, representatives, affiliates, and permitted successors and assigns of Buyer, and any other affected third parties, including all persons asserting any Interests or Claims in the Acquired Assets to be sold to Buyer pursuant to the APA, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

## Sale and Transfer of Acquired Assets

7.     Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, upon the Closing Date and pursuant to and except as otherwise set forth in the APA, the Acquired Assets shall be transferred to Buyer free and clear of all encumbrances, claims, interests, and liens, including the Excluded Liabilities (as defined in the APA), mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, and other liens (including mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets (to the extent not taken prepetition), contracts, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including any

restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income Security Act of 1974, liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' current and former employees, including any withdrawal liabilities or liabilities under any collective bargaining agreement or labor practice agreement, of the Debtors or any of the Debtors' predecessors or affiliates, claims, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (other than Assumed Liabilities and Permitted Encumbrances, in each case, if any) (all of the foregoing as set forth in this Paragraph 7, collectively in this Order, the "**Interests or Claims**"), with all such Interests or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors and their bankruptcy estates may possess with respect thereto.

8.    On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Acquired Assets and a bill of sale transferring good and marketable title in such Acquired Assets to Buyer pursuant to the terms and allocations set forth in this Sale Order and the APA.  For the avoidance of doubt, the Excluded Assets set forth in the APA are not

included in the Acquired Assets, and the Excluded Liabilities set forth in the APA are not Assumed Liabilities.

9.      Subject to the terms and conditions of this Sale Order, the transfer of Acquired Assets to Buyer pursuant to the APA and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in this Sale Order and the APA, constitute a legal, valid, and effective transfer of the Acquired Assets, and shall vest Buyer with all of the right, title, and interest of Sellers in and to the Acquired Assets as set forth in this Sale Order and the APA, as applicable, free and clear of all Interests or Claims of any kind or nature whatsoever (except as otherwise specifically assumed in, or permitted by, the APA).

10.     At the Closing, unless otherwise ordered by the Court, after the payment or reservation for any administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code and/or any post-petition administrative claims insofar as such claims are allowed, currently due and owing, undisputed, and comports with the Approved Budget (as defined in the Final DIP Order) are paid in full, the remainder of the cash proceeds generated from the Sale shall be paid to the DIP Lenders for permanent application against the obligations owing by the Debtors to the DIP Lenders in accordance with the terms and conditions of Final DIP Order and the DIP Agreement until such time as all such obligations have been paid in full.

11.     At the Closing, any Interest or Claims of the Tranche B-1 Term Lenders shall attach to the cash proceeds of the Sale in the same order of priority, with the same validity, force, and effect that the Tranche B-1 Term Lenders had prior to the Sale.

12.     At the Closing, any Interest or Claims of the Tranche B-2 Term Lenders shall attach to the cash proceeds of the Sale in the same order of priority, with the same validity, force, and effect that the Tranche B-2 Term Lenders had prior to the Sale.

13.     Buyer, to the extent provided by this Sale Order or the APA, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of Debtors constituting Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to Buyer as of the Closing Date as provided by this Sale Order and the APA.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Acquired Assets sold, transferred, assigned, or conveyed to Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

14.     All entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed (wherever located) to Buyer pursuant to this Sale Order and the APA are hereby directed to surrender possession of the Acquired Assets to Buyer on the Closing Date.

15.     Upon consummation of the Sale, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims against or in the Acquired Assets shall not have delivered to Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests or Claims

that the person or entity has with respect to the Acquired Assets (unless otherwise assumed in, or permitted by, the APA), or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets and (b) Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Acquired Assets of any kind or nature (except as otherwise specifically assumed in, or permitted by, the APA); provided that, notwithstanding anything in this Sale Order or the APA to the contrary, the provisions of this Sale Order shall be self-executing, and neither Sellers nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  For the avoidance of doubt, upon consummation of the Sale, Buyer is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code and the related provisions of the Bankruptcy Code.

16.    Except to the extent specifically included in Assumed Liabilities or Permitted Encumbrances, or to enforce the APA, all entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, customers, employees and former employees, dealers and sale representatives, and trade or other creditors holding or claiming to hold Interests or Claims of any kind or nature whatsoever against or in the Debtors and their bankruptcy estates or

the Acquired Assets arising under or out of, in connection with, or in any way relating to, the Acquired Assets or the transfer of the Acquired Assets to Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting any Interests or Claims of any kind or nature whatsoever against Buyer and its permitted successors, designees, and assigns, or property, or the Acquired Assets conveyed in accordance with the APA.   For the avoidance of doubt, Transfer Taxes (as defined in the APA) are Permitted Encumbrances.

17.    As of and after the Closing:  (a) each of the Debtors' creditors and each holder of any Interests or Claims, is hereby authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests or Claims in the Acquired Assets (if any) as such Interests or Claims may have been recorded or may otherwise exist; and (b) any Asset that may be subject to a statutory or mechanic's lien shall be turned over and such liens shall attach to the proceeds of the Sale in the same priority they currently enjoy with respect to the Acquired Assets.

18.    Buyer is not a mere continuation of Sellers or any other Debtor or any Debtor's bankruptcy estate, and there is no continuity, no common identity, and no continuity of enterprise between Buyer and any Debtor.  Buyer is not holding, and shall not be deemed to be holding itself out to the public as a continuation of any Debtor.  Buyer shall not be determined to be a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or de facto merger of Buyer or any of the Debtors and neither Buyer nor any of its agents, representatives or affiliates shall at any time be deemed to have assumed, or in any way be responsible for any obligation or liability of any Debtor (or any affiliates thereof) and/or any Debtor's estate except as expressly provided in this Sale Order or the APA.

**Contracts to be Assumed and Assigned**

19.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, Sellers' assumption and assignment to Buyer, and Buyer's assumption, on the terms set forth in this Sale Order and the APA of the Assigned Contracts, is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

20.     Sellers are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to Buyer, effective upon the Closing Date, the Assigned Contracts free and clear of all Interests or Claims of any kind or nature whatsoever (except as otherwise specifically assumed in, or specifically permitted by, the APA) and execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Buyer.

21.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested in all right, title, and interest of the Debtors' in respect of each Assigned Contract.  The Debtors shall cooperate with, and take all actions reasonably requested by, Buyer to effectuate the foregoing, as further provided in this Sale Order and the APA.

22.     The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract that is assumed and assigned to Buyer pursuant to the APA (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

23.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, at the Closing, Buyer shall pay to the respective counterparty the Cure Amounts relating to any Assigned Contract.

24.     Except as otherwise agreed in writing between the Debtors and the non-Debtor parties to the Assigned Contracts or stated on the record of the Sale Hearing, the Cure Amounts for the Assigned Contracts are hereby fixed at the amounts set forth on **Exhibit 2** attached to this Sale Order, and the non-Debtor parties to such Assigned Contracts are forever bound by such Cure Amounts and, upon payment of such Cure Amounts, are hereby enjoined from taking any action against the Debtors and their bankruptcy estates, Buyer and all agents, representatives, affiliates, and permitted successors and assigns of Buyer, or the Acquired Assets with respect to any claim for cure or Cure Amounts under any Assigned Contract.

25.     The payment of the applicable Cure Amounts (if any) shall effect a complete cure of all defaults existing as of the date that such executory contracts or unexpired leases are assumed and fully compensate for any actual pecuniary loss to such non-Debtor party resulting from such default.

26.     Buyer shall have assumed the Assigned Contracts, and pursuant to section 365(f) of the Bankruptcy Code, the assignment by Sellers of such Assigned Contracts shall not be a default thereunder.  After the payment of the relevant Cure Amounts by the Buyer as set forth herein, neither the Debtors and their bankruptcy estates nor Buyer shall have any further liabilities of any kind to the non-Debtor counterparties to the Assigned Contracts, other than Buyer's obligations under the Assigned Contracts that accrue or become due and payable on or after the date that such Assigned Contracts are assumed.

27.     Any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by Sellers and assignment to Buyer of the Assigned Contracts have been satisfied.

28.     Any party having the right to consent to the assumption or assignment of any Assigned Contract that failed to object to such assumption or assignment as of the date of the Sale Hearing is deemed to have consented to such assumption and assignment for all purposes as required by section 365(c) of the Bankruptcy Code.

29.     As of the Closing and the assumption and assignment of the Assigned Contracts in accordance with this Sale Order, Buyer shall be deemed to be substituted for Sellers as a party to the applicable Assigned Contracts and the Debtors and their estates shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

30.     Buyer has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

31.     There shall be no assignment fees, increases, rent-acceleration, or any other fees charged to Buyer or the Debtors and their estates as a result of the assumption and assignment of the Assigned Contracts.

32.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors and their estates or Buyer any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date that such Assigned Contracts are assumed or arising by reason of the Closing.

33.     Neither Buyer nor any successor of Buyer shall be responsible for or have any Interests or Claims or obligations arising out of any of the contracts, agreements, or understandings that are not Assigned Contracts after the Closing Date (except as specifically provided by the APA).

### Additional Provisions

34.     Debtors and Buyer hereby waive, and shall be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

35.     Following the Closing, no holder of an Interest or Claim in or against the Debtors and their bankruptcy estates or the Acquired Assets shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to such Interest or Claim or any actions that the Debtors and their bankruptcy estates may take in these chapter 11 cases or any successor cases.

36.     The Debtors, including their respective officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the APA and this Sale Order.  The Debtors shall be, and they hereby are, authorized to take all such actions as may be

necessary to effectuate the terms of this Sale Order and the relief granted pursuant to this Sale Order.

37.     The Sale is undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorizations and approvals provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts by Buyer, if any, and the sale free and clear of all Interests or Claims (unless otherwise specifically assumed in, or permitted by, the APA)), unless such authorization and consummation of such Sale are duly stayed pending such appeal.  Buyer is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

38.     As a good-faith purchaser of the Acquired Assets, Buyer has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Acquired Assets, and therefore the sale of the Acquired Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

39.     The failure specifically to include any particular provisions of the APA including any of the documents, agreements, or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of this Court that the APA and each document, agreement or instrument be authorized and approved in its entirety.

40.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

41.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Sale Order shall govern.

42.     To the extent there are any inconsistencies between the terms of this Sale Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

43.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

44.     **Cigna Protective Objection**.    Notwithstanding anything in this Sale Order, any notice related thereto, or the APA to the contrary, and for the avoidance of doubt, the Cigna Employee Benefits Agreements, as identified in the Protective Objection of Cigna [D.I. 267] ("Cigna Objection") shall not be deemed "Assigned Contracts" for purposes of this Sale Order, and shall not be assumed and assigned pursuant to this Sale Order as part of the Sale.  This resolves the Cigna Objection.

45.     **Excluded Contracts and Leases.**    Notwithstanding anything to the contrary in this Sale Order, the following contracts and leases shall not be considered Assigned Contracts:  (1) that certain real property lease with 8469 Blue Ash Road, LLC for certain real property located at 8469 Blue Ash Road, Cincinnati, Ohio 45236; and (2) Creating a Production Company by Rona Edwards and Monika Skerbelis.

46.     **National Frame Building Association.**    The National Frame Building Association ("NFBA") has asserted that the Debtors are holding at least $213,756.66 (subject to the parties' reconciliation) in trust for the NFBA pursuant to a contractual agreement between the

Debtors and the NFBA, which inured to the benefit of both parties.  Nothing in this Order will affect the NFBA assertion that $213,756.66 (subject to the parties reconciliation) held by the Debtors is not the Debtors' funds, but the funds of NFBA being held in trust by the Debtors for the NFBA.  The Debtors, the DIP Lenders, the Tranche B-1 Term Lenders, and Tranche B-2 Term Lenders retain their rights to review and contest the NFBA's assertion that the Debtors are holding the NFBA's funds.

47.    The provisions of this Sale Order are nonseverable and mutually dependent.

48.    Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

49.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, and to protect Buyer or any of the Assumed Contracts or Acquired Assets against any of the Interests or Claims, as provided herein, including to enjoin permanently the commencement or continuation of any action seeking to impose successor liability.

01:24457673.1    **Dated: July 1st, 2019**
**Wilmington, Delaware**

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**